IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MELCINA BLANTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15 CV 3156 |
| | ) | |
| ROUNDPOINT MORTGAGE SERVICING | ) | Judge Robert W. Gettleman |
| CORP., CODILIS & ASSOCIATES, P.C., | ) | Magistrate Judge Sheila Finnegan |
| LOCKE LORD LLP, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHNSON, BLUMBERG & ASSOCIATES, LLC, | ) | |
| 230 W Monroe Street, # 1125 | ) | |
| Chicago, IL 60606 | ) | |
| | ) | |
| New Party Defendant. | ) | |

## SECOND AMENDED COMPLAINT

Now comes Plaintiff, Melcina Blanton, by and through her counsel, and states as follows for her Second Amended Complaint against the Defendants Roundpoint Mortgage Servicing Corporation; Codilis and Associates, PC; Locke Lord LLP; and New Party Defendant, Johnson, Blumberg and Associates, LLC.

## PARTIES

1. Plaintiff Melcina Blanton ("Plaintiff") is the owner of residential real property, located at, and commonly known as 7727 South Bennett, Chicago, IL 60649 (the "Property")

2. Defendant Roundpoint Mortgage Servicing Corporation (hereinafter "Defendant Roundpoint" or "Roundpoint") is a Florida corporation, a mortgage loan servicer with its principal place of

business in North Carolina. It is not in good standing in Illinois. Roundpoint is the current servicer (i.e., it collects interest, principal, and escrow payments) of a Note and Mortgage on the Property that secures said Note (the "Loan' or Plaintiff's Loan"). Servicing of the Loan was transferred to Roundpoint on or about November 5, 2013.

3. Defendant Codilis and Associates, PC ("Defendant Codilis" or "Codilis") is a law firm located in the Chicago area that primarily represents the financial services industry throughout Illinois. Codilis is engaged in the business of using the mails and telephone to collect consumer debts originally owed to others, including residential mortgage debts. According to its web site at http://www.codilis.com/services.html (last accessed September 7, 2015), "Codilis & Associates prosecutes foreclosure actions in all 102 Illinois counties. The firm has well trained attorneys and staff using sophisticated proprietary software to successfully manage the complex judicial foreclosure process."

4. Codilis represented Defendant Roundpoint in a 2014 foreclosure action filed against the Plaintiff being known as: *Roundpoint Mortgage Servicing Corporation vs. Melcina Blanton, et al*., Case No. 14 CH 012508, Circuit Court of Cook County Illinois, County Department-Chancery Division. ("First Foreclosure").

5. Defendant Locke Lord, LLP (hereinafter "Defendant Locke Lord" or "Locke Lord" is an international law firm, headquartered in Dallas Texas, with an office located in Chicago, Illinois. According to its web site at the following URL (last accessed on September 7, 2015), http://www.lockelord.com/services/practices/consumer-finance, Locke Lord's Consumer Finance Practice Group is "devoted to defending consumer lenders against class actions and

individual actions brought pursuant to a variety of state and federal consumer protection statutes, including cases involving mortgage fraud, predatory lending and unfair and deceptive acts and practices statutes."  Locke Lord also represents said consumer lenders in mortgage foreclosures and is thus engaged in the business of using the mails to collect residential mortgage debts.

6.  Locke Lord was engaged to represent Roundpoint on or about July of 2014, during and following the dismissal of the above referenced First Foreclosure action against the Plaintiff, and has continued to try to collect sums allegedly due from Plaintiff to Roundpoint on her allegedly delinquent Loan.

7.  Defendant Johnson, Blumberg & Associates, LLC (hereinafter "Defendant Johnson Blumberg" or "Johnson Blumberg") is a law firm headquartered in Chicago, Illinois with branch offices located in other midwestern states, and specializes in commercial litigation, bankruptcy, foreclosure and default servicing and collections.

8.  Like Codilis and Locke Lord, according to Johnson Blumberg's web site at the following URL:  http://johnson-blumberg.squarespace.com/about-jba/  (last accessed on September 7, 2015), Johnson Blumberg regularly represents mortgage lenders and servicers in foreclosures, with "personnel that work solely on complaints, judgments, sales, non-judicial foreclosures, title clearing, evictions, closings and collection actions."  Thus, Johnson Blumberg is engaged in the business of using the mails and telephone to collect consumer debts originally owed to others, including residential mortgage debts.

9. Johnson Blumberg currently represents Defendant Roundpoint in its efforts to foreclose upon the Plaintiff and is counsel of record in a pending matter known as: *Roundpoint Mortgage Servicing Corporation v. Melcina Blanton, et. al.*, 15 CH 10526, Circuit Court of Cook County Illinois, County Department-Chancery Division**.** ("Second Foreclosure")

10. All Defendants are "debt collectors" engaged in the regular collection of debts owed to another from "consumers" as those terms are defined in 15 U.S.C. §1692a(6) and (3), respectively. Defendant Roundpoint is not exempted from the FDCPA by virtue of being mortgage servicer because it assumed the servicing of Plaintiff's Loan after it was allegedly delinquent. *See* 15 U.S.C. §1692a(6)(F)(iii)).

11. Plaintiff is a "consumer" as that term is defined in 15 U.S.C. §1692a(3). The alleged debt was incurred for personal, family or household purposes (to pay for housing) and not for business purposes.

## JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, et seq. (RESPA), and the Truth in Lending Act, 15 U.S.C. §1640(e) (TILA) . This action is filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §1024.1, et seq. of Regulation X and 12 C.F.R. §1026.41 of Regulation Z. The TILA-related transactions herein complained of, concern a "closed-end consumer credit transaction secured by a dwelling," as defined in 12 C.F.R. §1026.41(a).

13. This Court also has jurisdiction under 15 U.S.C. §1692k(d) of the Fair Debt Collection Practices Act (FDCPA) This Court has supplemental jurisdiction to hear any and all state law claims that are pleaded herein or that may subsequently arise pursuant to 28 U.S.C. §1367.

14. Venue lies in this District pursuant to 28 U.S.C. §1391(b), as Plaintiff resides and the Property is located in Cook County, Illinois, in the Northern District of Illinois, Eastern Division.

## INTRODUCTION

15. Plaintiff restates and incorporates all of her statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

16. This case is brought under 15 U.S.C. 1601 et seq (TILA) 12 U.S.C. §§2601, et seq. (RESPA) and 15 U.S.C. §1692k(d), the Fair Debt Collection Practices Act and the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505 *et. seq.* and for the common law tort of conversion.

17. The case concerns numerous, material errors and false statements that the Defendants Roundpoint, Codilis, and Locke Lord and Johnson Blumberg made in servicing, accounting for, and attempting to collect on Plaintiff's Loan immediately following the November 2013 transfer of the servicing of the Loan to Roundpoint; and the Defendants' failure to properly acknowledge and respond to Plaintiff's numerous Requests for Information, Notice of Errors and Qualified Written Requests concerning alleged delinquencies. It also concerns the continuing and improper accounting for and servicing of Plaintiff's Loan, which conduct is unscrupulous, immoral, unfair and deceptive and has damaged the Plaintiff thereby.

18. Plaintiff was at all times relevant herein engaged in actively disputing the alleged, but incorrect, delinquency on her Loan with Roundpoint, and with Codilis prior to and during the pendency of a wrongful foreclosure proceeding filed against her (First Foreclosure) and then engaged with Locke Lord following the dismissal of the First Foreclosure, and finally Johnson Blumberg on the still-pending Second Foreclosure.

19. Defendants' actions towards Plaintiff constitute material violations of numerous sections of the new federal RESPA and TILA servicing regulations and the FDCPA, as will appear more fully set out below. In addition, Defendants' unconscionable and immoral conduct violated the Illinois Consumer Fraud and Deceptive Practices Act.

20. Further, Defendant Roundpoint appears to have converted $3094.54 that was in November and December of 2014 being held in suspense in violation of Regulation X to RESPA and then without explanation or redistribution removed from Plaintiff's account in January of 2015.

21. In essence, Roundpoint made incorrect calculations and attempted to assess improper charges upon beginning to service the Plaintiff's Loan and, as a result, has improperly and destructively treated the Plaintiff as chronically delinquent on her Loan obligations, all to Plaintiff's great and continuing damage and prejudice and compromised mental and physical health.

## FACTS

22. Plaintiff restates and incorporates all of her statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

23. On or about June 25, 2009 Plaintiff Blanton borrowed $104,500 from Community Bank of Oak Park and River Forest. Said Loan is evidenced by a Note and was secured by a Mortgage on

her personal residence located at 7727 South Bennett, Chicago, IL 60649. (PLAINTIFF'S EXHIBITS 1 and 2, respectively).

24. From her first payment on the Loan to her original servicer, Franklin American Mortgage Company (hereinafter "Franklin"), until the servicing rights were transferred to Defendant Roundpoint, Plaintiff was never late or in arrears on her mortgage Loan.

25. On or about November 5, 2013, Defendant Roundpoint assumed the servicing of Plaintiff Blanton's mortgage Loan from the Loan's previous servicer, Franklin. Plaintiff received notice of the change from Roundpoint by a letter dated November 15, 2013 captioned, "NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS." (PLAINTIFF'S EXHIBIT 3)

26. Prior to sending out the Roundpoint notice of transfer, Roundpoint sent its first mortgage statement, dated November 11, 2013, to Plaintiff indicating that she was past due on her October 2013 mortgage payment. Roundpoint's statement claimed that Plaintiff owed two payments on her Loan (for October and November of 2013). (PLAINTIFF'S EXHIBIT 4)

27. Defendant Roundpoint's very first statement to Blanton was incorrect and false because, in fact, she made her October payment to Franklin American Mortgage Company back in early October of 2013, before receiving any notice from either servicer that the Loan's servicing rights were being transferred. Proof of Plaintiff's payment of the October payment to Franklin American is attached and marked as PLAINTIFF'S EXHIBIT 5.

28. Plaintiff timely made her November 2013 payment to Roundpoint for principal, interest, taxes and insurance (PITI) and her December invoice correctly reflected her payment for October's

invoice. However, in a Roundpoint notice dated November 25, 2013, denominated "ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT" (PLAINTIFF'S EXHIBIT 6). Roundpoint informed the Plaintiff that due to Roundpoint's projected 2014 escrow calculations, her total monthly payment would increase from $1,029.01 to $1,166.53, an increase of $137.52 per month despite the fact that there were no changes in Plaintiff's real estate tax liability or insurance expense.

29. Defendant's calculations were, yet again, incorrect. A principal reason for the misstatement of the projected escrow was that Roundpoint inexplicably doubled Plaintiff's $81.86 monthly Private Mortgage Insurance (PMI) contribution which was a part of the Escrow. The PMI miscalculation alone would have cost Plaintiff an additional $982.32 per year. Further, in part because of the doubled PMI error, Roundpoint projected an escrow shortage for 2014 of $640.20. Therefore, the compounded error in Roundpoint's projection would have improperly raised Plaintiff's monthly payment by another $53.35 per month.

30. Just between the two errors in the doubled PMI ($163.72 instead of 81.86) and putative escrow shortage ($53.35), Plaintiff's new monthly payment was set to increase $135.21 per month. In total, Roundpoint was going to overcharge Plaintiff Blanton based upon faulty escrow calculations by approximately $137.52 per month, or $1,650.24 in 2014 alone.

31. Plaintiff, upon receiving the initial 2014 escrow projection in November, contacted Roundpoint by telephone on numerous occasions to point out Roundpoint's mistakes and demand a correction to the 2014 escrow projection calculations.

32. Roundpoint's staff never conceded the obvious mistakes in its monthly statements and escrow

analysis. Plaintiff was repeatedly treated in a condescending manner, and given incorrect or impossible explanations for the escrow mistakes from Roundpoint's staff. Plaintiff was told that her "PMI had increased" (not true, or even possible) or that the increases were due to the "need for a cushion." These statements were false, because the maximum cushion is ⅙ of the annual escrow, or two months of payments. Blanton continued to communicate on a regular basis with Roundpoint staff by telephone until approximately March of 2014.

33. Plaintiff made her regular November and December 2013 payments of $1,029.01 and continued to protest the incorrectly calculated, and substantially increased, monthly payment of $1,166.53 that was set to take effect beginning in January of 2014. Plaintiff's continuing phone calls to Roundpoint were becoming increasingly frustrating and beginning to affect her blood pressure and physical health.

34. It was clear to Plaintiff that Roundpoint was not going to correct its errors in re-calculating the payments on her Loan. When her January 2014 Roundpoint statement included the incorrect and higher monthly payment (PLAINTIFF'S EXHIBIT 7), Plaintiff decided use a "self-help" approach to change the manner in which she paid her Loan. Because she had not been given any indication that Roundpoint would correct her total monthly payment, and the error was in the escrow analysis, she started sending in two checks every month to Roundpoint.

35. The two checks paid the portion of the monthly payment that remained stable over the life of the loan: the combined principal and interest ($609.83) and the *correct* amount for PMI ($81.86). An example of Plaintiff's bifurcated payments is attached hereto as PLAINTIFF'S EXHIBIT 8. Plaintiff intended to see if Roundpoint would change her incorrect monthly

payment. Moreover, Plaintiff was prepared to monitor and directly pay her real estate taxes and hazard insurance if Roundpoint continued to incompetently service her Loan.

36. Plaintiff timely paid Roundpoint her principal and interest and her PMI by two checks for January, February, March April, May, June, July, August, September, October, November and December of 2014. Plaintiff continued to telephone Roundpoint about its faulty escrow calculations, but to no apparent effect.

37. In February of 2014 the first installment of the twice-yearly real estate tax collection for Cook County was about to come due. Knowing that the tax payments are usually sent to the County Treasurer by the servicer about a month in advance, in late January or early February of 2014 Plaintiff contacted Roundpoint to inquire whether Roundpoint was going to pay the first installment of the taxes out of her (incorrect) escrow balance and was informed by Roundpoint staff that the taxes had already been paid.

38. Plaintiff followed up with the Cook County Treasurer and was informed by a "Ms. Abdullah" that the taxes had not been paid.

39. Aware of Cook County's draconian procedures for collecting delinquent taxes, Plaintiff decided to pay the now-due installment of $1,433.58 directly to the Cook County Treasurer (PLAINTIFF'S EXHIBIT 9). Plaintiff paid the real estate taxes on February 4, 2014.

40. Roundpoint sent an invoice dated February 4, 2014 for the March monthly payment, and as was true for January and February, the payment amount was inflated. Plaintiff sent in her two checks to Roundpoint for principal, interest and PMI.

41. Roundpoint sent a new "ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT" dated February 19, 2014. The re-worked escrow analysis correctly calculated the PMI amount at $81.86. The new escrow charges seemed correct, but there was no information about reconciling Plaintiff's account with the three prior months' statements or withdrawing the late fees assessed against her. While the disclosure statement indicated the new reduced monthly payment was effective March 1, 2014, the earlier March statement was for the incorrect amount. Further, by March of 2014, Roundpoint had assessed $60.98 in late fees that were not taken off her account, notwithstanding the problems were caused by Roundpoint's own escrow analysis errors.

42. There were also monthly escrow balance changes reported on Blanton's statements from Roundpoint that couldn't be explained according to the Plaintiff's own records. Telephone contacts with Roundpoint continued to no avail. In late March of 2014 Roundpoint sent Plaintiff a Notice of Default.

43. On or about April 12, 2014 Plaintiff sent a "Letter of Dispute" to Roundpoint pointing out that all the obligations under the loan had been met and (the obligation to timely pay taxes and secure insurance were being directly handled by the Plaintiff) and that she disputed having the late payment fees attached to her account. (PLAINTIFF'S EXHIBIT 11).

44. On or about May 7, 2014 Roundpoint responded as usual, by adamantly (albeit vaguely) stating that Roundpoint's accounts were correct. (PLAINTIFF'S EXHIBIT 12) Roundpoint attached copies of the Franklin loan transaction history (which was never in dispute) and the Roundpoint transaction history. Nowhere in the response did Roundpoint explain what

particular transactions were causing a misunderstanding on Plaintiff's part. Further, the May 2014 response from Roundpoint continued to fail to acknowledge the February tax payment Plaintiff made directly to the Treasurer that was not appearing as a credit on her monthly statements.

45. In May of 2014, Plaintiff comparison-shopped for hazard insurance for her home and discovered that Liberty Mutual would provide the same coverages as the servicer-selected insurer, Safeco, but the Liberty Mutual policy would cost approximately $300 less per year.

46. Plaintiff informed Roundpoint that she would be purchasing the Liberty Mutual policy and Plaintiff paid for Liberty Mutual's policy to cover her home. (PLAINTIFF'S EXHIBIT 13).

47. On or about June 20, 2014 Plaintiff received a "NOTICE PURSUANT TO FAIR DEBT COLLECTION PRACTICES ACT" from Defendant Codilis and Associates, PC, asserting that she owed $99,913.01 on the now-accelerated Loan and threatening foreclosure if the balance was not paid in full. (PLAINTIFF'S EXHIBIT 14)

48. Despairing of any meaningful resolution with Roundpoint, Plaintiff decided to pursue a legal action against her servicer (and eventually Codilis) being known as *Melcina Blanton vs. Roundpoint Mortgage Servicing Corporation,* Case No. 2014-M1-136678 in Circuit Court of Cook County, First Municipal District. Plaintiff filed the action on July 7, 2014 and proceeded against Roundpoint *pro se.*

49. On or about June 10, 2014 Plaintiff received an unsolicited invitation to apply for a mortgage modification from Roundpoint. (PLAINTIFF'S EXHIBIT 15) The letter included a blank application for a loss mitigation assistance. Plaintiff did not need or want a loan modification,

so she did not fill out or return the enclosed forms to Roundpoint.

50. On or about July 10, 2014, Plaintiff received a follow-up and unsolicited offer from Roundpoint for her to begin paying on a Trial Period Plan that, if properly completed, would lead to a permanent loan modification. (PLAINTIFF'S EXHIBIT 16)  The letter falsely claimed that "Your mortgage is seriously delinquent" and invited Plaintiff to "Please Call _____at _____if you have any questions about any of the above information."

51.  The tone of the "offering documents" was that the Trial Plan was a formality she needed to comply with in order to qualify for a permanent loan modification for an extended, 40-year term and a reduced interest rate.  Plaintiff was surprised to receive the "loan modification" offer from Roundpoint because she did not apply for loss mitigation assistance and, in fact, did not need or want a loan modification because she had no trouble affording her mortgage. Plaintiff did not respond to the loan modification offer (nor could she, as there was no specific person or number listed in the offer), thereby declining to accept it.

52. On July 31, 2014, 2014 Roundpoint, by and through its attorneys, Defendant Codilis, filed a complaint in foreclosure against the Plaintiff, being know as: *Roundpoint Mortgage Servicing Corporation vs. Melcina Blanton, et al*., Case No. 14 CH 012508, Circuit Court of Cook County Illinois, County Department-Chancery Division. (First Foreclosure)

53. The Complaint filed in that action alleged that Plaintiff had "not paid the monthly installments of Principal, taxes, Interest and insurance for 02/01/2014 through to the present; the Principal balance due on the Note and Mortgage is $97,794.17, plus interest," and, etc. This allegation of Plaintiff's delinquency was patently untrue.

54. In fact, as was well known to Roundpoint and should have been well known to Defendant Codilis, the Plaintiff had paid all the principal, taxes, interest, and insurance on her Loan when this foreclosure was filed. As will appear more fully when evidence is adduced through discovery and at trial, Plaintiff Blanton had actually overpaid on her mortgage obligation through to the date the foreclosure action was filed and was not in arrears or default of her loan.

55. By the time the First Foreclosure action was filed, Plaintiff had actually paid a total of $9,258.82 since January of 2014. If the Plaintiff had only made the "regular" (but still disputed) monthly payments over the same period of time (i.e. all of Roundpoint's invoices through July), the sum of the seven invoices would have only totaled $8,815.34. By August of 2014, Plaintiff had overpaid more than $400 on her Loan by choosing the self-help process of direct paying the taxes and hazard insurance on her property.

56. On or about August 15, 2014, while the First Foreclosure was still pending against her, Roundpoint sent a NOTICE OF DEFAULT AND INTENT TO ACCELERATE (PLAINTIFF'S EXHIBIT 17), that contended, *inter alia*, that Plaintiff was not in arrears from February of 2014 (as alleged in the foreclosure filed against her just two weeks before) but only from May of 2014. This mid-suit Roundpoint notice contended that she owed $4,440.22 in total, with her regular mortgage payments making up $4,252.60 of that alleged delinquency.

57. Defendant Roundpoint knew that these statements were patently false in mid-August of 2014 and could only be asserted against the Plaintiff by assiduously ignoring Plaintiff's self-help approach of assuming direct payment of the Loan-related taxes and insurance. In fact, by the

date of the notice, August 15, 2014, Plaintiff had advanced $3,725.30 to keep the taxes current and the insurance in place.

58. On or about August 27, 2014, Defendant Roundpoint by and through their attorneys, Defendant Codilis, filed a motion to dismiss the foreclosure suit against Plaintiff Blanton. (PLAINTIFF'S EXHIBIT 18) Plaintiff did not join in dismissal of the suit and was in fact surprised when she received notice of the dismissal.

59. Following dismissal of the First Foreclosure, Plaintiff and Roundpoint and Roundpoint's new counsel, Defendant Locke Lord, exchanged correspondence with no resolution, presumably because Plaintiff was not interested in a loan modification. It soon became clear to the Plaintiff that, notwithstanding the Roundpoint dismissal and the understanding that her Loan was "brought current" as of the foreclosure dismissal date, Roundpoint and Locke Lord continued to treat the Loan as delinquent dating back from before August 27, 2014.

60. On or about October 20, 2014, Defendant Locke Lord, by attorney Courtney Nogar ("Nogar") sent a letter (PLAINTIFF'S EXHIBIT 19) to Plaintiff responding to her letter of September 9, 2014. (PLAINTIFF'S EXHIBIT 20)  The letter from Nogar falsely claimed that Roundpoint was "not legally required to respond" to Plaintiff's notices of error or requests for information. The letter also claimed that Plaintiff could not directly contact Roundpoint for information until the litigation is resolved.  This claim was false because the Real Estate Settlement Procedures Act (RESPA) and Regulation X (12 CFR Section 1024.35 and 1024.36) gives borrowers the right to notify servicers of errors or request information.

61. Locke Lord, via Nogar, also partially addressed the various prior misunderstandings and conflicts, including the series of events that led to Plaintiff paying her first half real estate taxes in February. Locke Lord also falsely claimed that Roundpoint paid the Cook County Treasurer the first half of the taxes related to Plaintiff's home on February 11, 2014, and because Plaintiff had already paid the taxes on February 4, 2014, the Treasurer returned the Roundpoint payment on April 22, 2014.

62. However the "screen shots" provided to "prove" this sequence of events were not actually from the Treasurer's office, as claimed by Locke Lord, but from CoreLogic, a vendor of Roundpoint's, presumably hired to process tax payments in bulk.

63. Plaintiff was so upset by the October 20, 2014 letter from Locke Lord that her blood pressure went sky-high. She called her doctor, who advised her to come in immediately. In an effort to get her dangerously high blood pressure under control, Plaintiff's doctor doubled Plaintiff's normal dose of blood pressure medication.

64. Thereafter, Plaintiff again checked with the Cook County Treasurer's office and was again told by "Mrs. Abdullah" from the Treasurer's office had never received a payment from Roundpoint for Plaintiff's home in February, and therefore had never returned a payment to Roundpoint.

65. Plaintiff continued to make monthly principal interest and PMI payments to Roundpoint. However, Roundpoint stopped sending mortgage statements to Plaintiff for September and October of 2014. Plaintiff demanded that Roundpoint resume sending her statements by a letter dated October 31, 2014 (PLAINTIFF'S EXHIBIT 21) Roundpoint resumed sending monthly

statements in November of 2014.

66. Roundpoint and Locke Lord continued to try to convince, cajole, and finally threaten, the Plaintiff to accept the proffered, but unwanted, loan modification. On or about November 18, 2014, Defendant Locke Lord sent an offer to settle the still pending suit Plaintiff filed against Roundpoint and Codilis back in July. (PLAINTIFF'S EXHIBIT 22) In exchange for dismissal of her suit and Plaintiff signing various agreements and waivers, Plaintiff could secure the permanent phase of the trial loan modification offered back on July 10, 2014.

67. Plaintiff had not applied for a loan modification, had not accepted the trial modification, had not signed it, had not returned it to Roundpoint, and had not paid any of the three $772.12 monthly payments required to be offered the permanent modification. However, Locke Lord's cover letter to Plaintiff offering the permanent modification said in relevant part: "As you know, you remain in arrears on your loan but because of payments made on the trial modification offered by Roundpoint on July 10, 2014, Roundpoint dismissed the foreclosure case against you." The letter continued, "Because of your timely payments on that trial modification, Roundpoint now offers you a permanent modification, enclosed for your review."

68. These assertion by Defendant Locke Lord of the Plaintiff being in arrears was untrue. Locke Lord's assertions that Plaintiff had made "timely payments" on the trial modification is a complete falsehood. Moreover, the assertion that the dismissal of the First Foreclosure was in consideration for her acceptance and completion of the trial modification from Roundpoint, is also completely false. As stated above in Paragraph 54, Plaintiff Blanton had nothing to do

with the dismissal of the First Foreclosure. She was surprised to learn of the dismissal on August 27, 2014, and had not agreed to any settlement to secure the dismissal. Plaintiff had assumed that Roundpoint and their counsel saw that the suit was baseless, because she was current on her loan, Roundpoint's repeated claims to the contrary notwithstanding.

69. Plaintiff again declined the loan modification offer and did not respond or return the documents required to begin the modification.

70. Plaintiff continued to make her payments on the Loan's principal and interest and the PMI. However, those payments were not being applied in any understandable manner to the principal and interest obligations on her loan.

71. Beginning in January of 2015, Roundpoint started returning all of the Plaintiff's checks unnegotiated. (PLAINTIFF'S EXHIBIT 23) Each and every payment sent in 2015 has been returned with the exception of April 2015, which payments were accepted for reasons unknown to the Plaintiff. The net effect of this refusal to accept payments has been to cause the "delinquency" on Plaintiff's Loan to skyrocket in 2015.

72. As of August of 2015, Roundpoint is reporting the Plaintiff as delinquent in the total amount of $22,587.52.

73. In addition to the proffered but returned principal, interest and PMI payments throughout 2015 (excepting April) Plaintiff has directly paid the Cook County real estate taxes and renewed the Liberty Mutual hazard insurance for 2015-2016.

74. On or about March 30, 2015, Plaintiff, who was at this point frustrated beyond belief, wrote a letter to the President of Roundpoint, David Worrall.  Her letter, entitled "Letter Disputing all

Charges to present, Default and Acceleration," explained that she has proof that she has made her payments. (PLAINTIFF'S EXHIBIT 24) Roundpoint later acknowledged that the letter was received on April 6, 2015.

75. On or about April of 2015, Roundpoint retained Defendant Johnson, Blumberg & Associates, LLC in the continuing effort to "collect" on the Plaintiff's Loan. On June 2, 2015, Johnson Blumberg responded to a telephone inquiry from the Plaintiff on May 8, 2015, asking Johnson Blumberg to validate the debt they were attempting to collect on behalf of Roundpoint. (PLAINTIFF'S EXHIBIT 25) To validate the debt Johnson Blumberg included a copy of the Note, Mortgage and Loan History, but without any effort to explain the loan history documentation.

76. Of the 22 unnumbered pages comprising the enclosed Roundpoint "Loan History" only six pages include a column of dates to reference numerous often cryptic transactions. The other pages are comprised of "free floating" columns of numbers without a guide or a key to understanding what they mean. In short, these reports, which could and should have been formatted to fit onto 4 to 6 pages, are rendered mostly useless for a concerned debtor to decipher the alleged basis for the alleged debt.

77. Meanwhile, Plaintiff continued to receive false and conflicting information from Roundpoint. For example, a statement from Roundpoint dated May 18, 2015 claims that the "Amount Due" is $16,809.33 and "As of 5/18/2015, you are 351 days delinquent on your mortgage loan." (PLAINTIFF'S EXHIBIT 26)

78. Four days later, Jeffrey P. Martin, an assistant vice president of Roundpoint, finally responded to Plaintiff's March 30, 2015 letter to Roundpoint's president, David Worrall. The May 22, 2015 letter states that Plaintiff's letter was received on April 6, 2015. It appears to be a response to a Request for Information (RFI) and Notice of Error (NOE) under the Real Estate Settlement Procedures Act and answers "questions" that were never asked by Plaintiff.(PLAINTIFF'S EXHIBIT 27)

79. The May 22, 2015 letter states: "The net amount due to bring the account current is $11,245.36." (PLAINTIFF'S EXHIBIT 27). The letter does not actually address any of Plaintiff's concerns.

80. Extremely confused by the $5,000-plus difference between the May 18 statement and the May 22 letter, Plaintiff sent another NOE to Roundpoint on or about June 9, 2015. (PLAINTIFF'S EXHIBIT 28)

81. In her letter, Plaintiff requested, once again, that Roundpoint correct its numerous errors and misstatements regarding her account. Plaintiff also requested that Roundpoint remove all incorrect charges and provide a complete, decipherable payment history.

82. On or about July 7, 2015 Johnson Blumberg, counsel on behalf of Roundpoint filed another foreclosure action against the Plaintiff being known as: *Roundpoint Mortgage Servicing Corporation v. Melcina Blanton, et. al.*, 15 CH 10526, Circuit Court of Cook County Illinois, County Department-Chancery Division**.** (Second Foreclosure) In the Complaint Defendants Roundpoint and Johnson Blumberg allege the same basic facts as alleged in the First Foreclosure but do not plead the now highly elevated arrearage.

83. Plaintiff has been forced to retain counsel to defend the Second Foreclosure.

84. To date, Roundpoint continues to insist that there has been "no error by Roundpoint." In a letter dated August 4, 2015, Roundpoint claimed that it had found "no evidence to support [Plaintiff's] allegations." (PLAINTIFF'S EXHIBIT 29) However, the enclosed documents tell a different story. For example, a document entitled "Blanton Escrow Disbursement Amounts" clearly demonstrates that Plaintiff was overcharged on her PMI. Another enclosure entitled "Blanton Corporate Advanced Amounts" shows a charge for a property inspection on August 28, 2014 -- *after* the First Foreclosure was dismissed. The Document entitled "Payment History" (PLAINTIFF'S EXHIBIT 30) was sent to Plaintiff in response to the Notice of Error dated June 9, 2015 (PLAINTIFF'S EXHIBIT 28).

## COUNT ONE

## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD & DECEPTIVE PRACTICES ACT

### 815 ILCS 505 *et. seq.*

85. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

86. The Defendants violated 815 ILCS 505/2 by engaging in an unfair and deceptive act or practice by using fraud, deception, and misrepresentation in their attempts to collect unauthorized fees and charges from Plaintiff and to foreclose on the Plaintiff's home.

87. The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or

damaged thereby.  815 ILCS 505/2.

88. Defendants' conduct occurred during the course of trade or commerce.

89. Defendants, by their conduct, intended, and do intend, that the Plaintiff and the Foreclosure Court rely on their misrepresentations as to the amounts due and owing.

90. Defendants' conduct, as described above, constitutes unfair conduct under the ICFA.

91. Defendants' unfair and deceptive conduct was immoral, unethical, unscrupulous and oppressive, in that all Defendants are in a position of strength in relation to the Plaintiff.

92. ICFA further states:

> Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion, may award actual economic damages or any other relief which the court deems proper,  815 ILCS 505/10a.

93. As pled in the above paragraphs, Plaintiff has been and continues to be harmed by Defendants' unfair and deceptive practices in the form of fees, costs, and charges that were wrongfully assessed to her mortgage account.  Plaintiff has also been forced to retain counsel to defend her foreclosure and to prosecute this action, and has suffered emotional distress and ill health as a result of Defendants' unconscionable actions.

94. Therefore, Plaintiff is entitled to relief pursuant to 815 ILCS 505/10a.

**COUNT TWO**

**FAIR DEBT COLLECTION PRACTICES ACT CLAIMS**
**AGAINST CODILIS AND ASSOCIATES**
**15 U.S.C §1692 et. seq.**

95. The Plaintiff incorporates by reference paragraphs 1 through the preceding paragraph as though fully stated herein.

96. Codilis's foregoing acts in attempting to collect this debt constitute violations of the Fair Debt Collection Practices Act, including but not limited to the following sections:

a.) §1692d- any conduct the natural consequence of which is to harass, oppress, or abuse any person; A foreclosure filing against a mortgage borrower when there is no delinquency or default has the natural consequence of harassing and abusing the Plaintiff.

b.) §1692e-any false, deceptive, or misleading representation or means in connection with the debt collection; in that the filing of a foreclosure action when the borrower is not in default is a false, deceptive and misleading representation to both the court and to Plaintiff Roundpoint's and Codilis's rights to attempt to collect the "debt."

c.) §1692e(2)- misrepresented the character, amount, or legal status of the alleged debt; in that the filing of a foreclosure action against a borrower who is not in default is a misrepresentation to both the court and the Plaintiff as to Roundpoint's and Codilis's rights to attempt to collect the debt.

d.) §1692f- any unfair or unconscionable means to collect or attempt to collect the alleged debt; in that filing a baseless foreclosure while attempting to collect a debt not owed by the Plaintiff is clearly unfair and unconscionable.

97. As counsel for Roundpoint, Defendant Codilis knew, or should have known, that the Plaintiff had by-passed the incorrectly calculated and improperly administered Loan escrow, putatively maintained by Defendant Roundpoint. As counsel for Roundpoint, Defendant Codilis knew, or should have known, that Plaintiff had made all the payments for her real estate taxes and hazard insurance directly to the taxing authority, the insurer or by direct and specific reimbursement to Roundpoint.

98. As counsel for Roundpoint, Defendant Codilis knew, or should have known, that the Plaintiff had made each and every monthly payment for her principal and interest to Roundpoint; As counsel for Roundpoint, Defendant Codilis knew, or should have known, that the Plaintiff had made each private mortgage insurance payment to Roundpoint.

99. As counsel for Roundpoint, Defendant Codilis knew, or should have known that the Plaintiff's

payments to Roundpoint, and to the taxing authority, and to the hazard insurance provider kept Plaintiff current on her mortgage Loan obligations and that she was not delinquent, nor in default, nor in arrears on any of her Loan obligations.

100. The Plaintiff was harmed when Codilis and Associates made false, deceptive or misleading representations when it sent the Plaintiff its June 20, 2014 "NOTICE PURSUANT TO FAIR DEBT COLLECTION PRACTICES ACT" asserting that she owed $99,913.01 on her mortgage Loan.

101. The Plaintiff was harmed when Codilis made false, deceptive or misleading representations by filing the First Foreclosure action in an attempt to collect a debt alleging that "Mortgagors[sic] have not paid the monthly installment of Principal, taxes, Interest and insurance for 02/01/14 through to the present;" and further alleged that, "the Principal balance due on the Note and Mortgage is $97,794.17."

102. By filing a baseless foreclosure action, Codilis used an unconscionable means to attempt to collect a debt.

103. The Plaintiff was harmed by these violations and actions of Codilis.   The Plaintiff is entitled to statutory damages, actual damages including damages for emotional distress, and attorneys' fees and costs pursuant to 15 U.S.C. §1692k(a).

## COUNT THREE

### FAIR DEBT COLLECTION PRACTICES ACT CLAIMS AGAINST JOHNSON BLUMBERG: MISLEADING AND FALSE STATEMENTS AND COMMUNICATIONS WITH THE PLAINTIFF

### 15 U.S.C §1692 et. seq.

104.  Plaintiff incorporates by reference paragraphs 1 through the preceding paragraph as though fully stated herein.

105. Johnson Blumberg and Associates LLC's foregoing acts in attempting to collect this debt constitute violations of the Fair Debt Collection Practices Act, including but not limited to the following sections:

      a.)  §1692d- any conduct the natural consequence of which is to harass, oppress, or abuse any person; A foreclosure filing against a mortgage borrower when there is no delinquency  has the natural consequence of harassing and abusing the Plaintiff.

      b.)  §1692e-any false, deceptive, or misleading representation or means in connection with the debt collection; in that the filing of a foreclosure action when the borrower is not in default  is a false, deceptive and misleading representation to both the court and the Mrs. Blanton as to the Roundpoint's and Johnson Blumberg's  rights to attempt to collect the debt.

      c.)  §1692e(2)- misrepresented the character, amount, or legal status of the alleged debt; in that the filing of a foreclosure action against a borrower who is not in default is a misrepresentation to both the court and the Mrs. Blanton as to Johnson Blumberg's rights to attempt to collect the debt.

      d.)  §1692f- any unfair or unconscionable means to collect or attempt to collect the alleged debt; in that attempting to collect a debt not owned to the Plaintiff is clearly unfair and unconscionable.

106. Defendant Johnson Blumberg violated Plaintiff's rights under the FDCPA when it sent a verification of the debts she allegedly owed Roundpoint on or about June 2, 2015. Johnson Blumberg included a "Loan History" that was formatted so as to be unconscionably misleading and confusing and unfairly deprived the Plaintiff of her rights to understand the nature of the debt she allegedly owed to Roundpoint. Defendant  Johnson Blumberg's debt verification response to Plaintiff (PLAINTIFF'S EXHIBIT 25) violated 15 U.S.C, 1692e(2)(A).

107. As counsel for Roundpoint, Defendant Johnson Blumberg knew, or should have known, that the Plaintiff had by-passed the incorrectly calculated and improperly administered Loan escrow, putatively maintained by Defendant Roundpoint.

108. As counsel for Roundpoint, Defendant Johnson Blumberg knew, or should have known that Plaintiff had made all the payments for her real estate taxes and hazard insurance directly to the taxing authority, the insurer or by direct and specific reimbursement to Roundpoint.

109. As counsel for Roundpoint, Defendant Johnson Blumberg knew, or should have known, that the Plaintiff had made each and every monthly payment for her principal and interest to Roundpoint through 2014; As counsel for Roundpoint, Defendant Johnson Blumberg knew, or should have known, that in 2015 the Plaintiff had paid, but Roundpoint had rejected, all of her principal and interest and private mortgage insurance payments (excepting April of 2015).

110. As counsel for Roundpoint, Defendant Johnson Blumberg knew, or should have known that the Plaintiff's payments and attempted payments to Roundpoint, and Plaintiff's payments to the taxing authority, and to the hazard insurance provider kept Plaintiff current on her mortgage Loan obligations and that she was not delinquent, nor in default, nor in arrears on any of her Loan obligations, except to the extent that Roundpoint caused such delinquencies by wrongfully refusing Plaintiff's principal and interest and private mortgage insurance payments in beginning in 2015.

111. The Plaintiff was harmed when Johnson Blumberg made false, deceptive or misleading representations by filing the instant foreclosure action in an attempt to collect a debt with upon false premises and false documentation.

112. By filing a baseless foreclosure action and attaching false documentation, Johnson Blumberg LLC used an unconscionable means to attempt to collect a debt.

113. The Plaintiff was harmed by these violations and actions of the Defendant Codilis and Plaintiff is entitled to statutory damages, actual damages including damages for emotional distress, and attorneys' fees and costs pursuant 15 U.S.C. §1692k(a).

## COUNT FOUR

### FAIR DEBT COLLECTION PRACTICES ACT AGAINST LOCKE LORD: MISLEADING AND FALSE STATEMENTS AND COMMUNICATIONS WITH THE PLAINTIFF

### 15 U.S.C §1692 et. seq.

114. Plaintiff incorporates by reference paragraphs 1 through the preceding paragraph as though fully stated herein.

115. Locke Lord's foregoing acts in attempting to collect this debt constitute violations of the Fair Debt Collection Practices Act, including but not limited to the following sections:

a.)    §1692d- any conduct the natural consequence of which is to harass, oppress, or abuse any person; A concocted misrepresentation of actions and consent by the Plaintiff as presented in Locke Lord's, letter to The Plaintiff dated November 18, 2014. (PLAINTIFF'S EXHIBIT 22)

b.)    §1692e-any false, deceptive, or misleading representation or means in connection with the debt collection; contending that Plaintiff agreed to a settlement in a foreclosure action is a false, deceptive and misleading representation about the Plaintiff to further advance Roundpoint's attempt to collect the debt for the alleged delinquency on the note,

c.)    §1692e(2)- misrepresented the character, amount, or legal status of the alleged debt;by fabricating a course of events that made Plaintiff appear to breach a settlement agreement.

d.)    §1692f- any unfair or unconscionable means to collect or attempt to collect the alleged debt; in that attempting to collect a debt not owned to the Plaintiff is clearly unfair and

unconscionable.

116. Defendant Locke Lord made numerous assertions in its letter to Plaintiff on behalf of Roundpoint dated November 18, 2014. (PLAINTIFF'S EXHIBIT 22). Specifically Locke Lord characterized the Plaintiff as:

    a.    Being in arrears on her loan
    b.    Having accepted and causing payments to be "made on the trial modification"
    c.    Having participated in, or been a party to an agreement with Roundpoint concerning the First Foreclosure that induced Roundpoint to "dismiss[ed] the foreclosure case against you."

None of these assertions is true and for Locke Lord to assert such a false and misleading course of events allegedly involving the Plaintiff violates 15 U.S.C. §1692e(2)(A).

117. The Plaintiff was harmed when Defendant Locke Lord made false, deceptive or misleading representations in an attempt to collect a debt with false documentation.

118. The Plaintiff was harmed by these violations and actions of Defendant Locke Lord. Plaintiff is entitled to statutory damages, actual damages including damages for emotional distress, and attorneys' fees and costs pursuant 15 U.S.C. §1692k(a).

### COUNT FIVE

### TRUTH IN LENDING ACT VIOLATIONS: DEFENDANT ROUNDPOINT'S FAILURE TO SEND PERIODIC STATEMENTS TO PLAINTIFF FOR SEPTEMBER AND OCTOBER OF 2014

### 12 C.F.R. §1026.41(a)(2)

119. Plaintiff restates and incorporates all of her statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

120. 12 C.F.R. §1026.41(a)(2) states in relevant part: "A servicer of a transaction subject to this section shall provide the consumer, for each billing cycle, a periodic statement . . ."

121. Defendant Roundpoint was required to send the the Plaintiff monthly, periodic statements reflecting her account for each billing cycle. Roundpoint failed to send and Plaintiff did not receive her September and October 2014 periodic statements.

122. Defendant Roundpoint is not exempted from compliance with 12 C.F.R. §1026.41 by any of the exceptions contained in 12 C.F.R. §1024.41(e)(1),(2),(3) or (4).

123. Plaintiff is not and has not been a debtor in bankruptcy under Title 11 of the United States Code.

124. Each month that Roundpoint failed to provide a periodic mortgage statement to Plaintiff, Roundpoint committed a clear, separate, distinct, and willful violation of 12 C.F.R. § 1026.41.

125. Defendant Roundpoint's actions are believed to be a pattern and practice of behavior in conscious disregard of Plaintiff's rights.

126. As a result of Roundpoint's actions, Roundpoint is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

**COUNTS SIX THROUGH EIGHT**

**VIOLATIONS OF TILA BY ROUNDPOINT:**
**FAILURE TO PROPERLY CREDIT PERIODIC PAYMENTS AS OF DATE OF RECEIPT**

**12 C.F.R. § 1026.36(c)**

127. Plaintiff restates and incorporates herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

128. 12 C.F.R. § 1026.36(c)(1) provides that:

> (i) *Periodic payments.* No servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency, or except as provided in paragraph (c)(1)(iii) of this section. A periodic payment, as used in this paragraph (c), is an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle. A payment qualifies as a periodic payment even if it does not include amounts required to cover late fees, other fees, or non-escrow payments a servicer has advanced on a consumer's behalf.
>
> (ii) *Partial payments.* Any servicer that retains a partial payment, meaning any payment less than a periodic payment, in a suspense or unapplied funds account shall:
>
> (A) Disclose to the consumer the total amount of funds held in such suspense or unapplied funds account on the periodic statement as required by § 1026.41(d)(3), if a periodic statement is required; and
>
> (B) On accumulation of sufficient funds to cover a periodic payment in any suspense or unapplied funds account, treat such funds as a periodic payment received in accordance with paragraph (c)(1)(i) of this section.

129. The Payment History reflects that as of January 19, 2015, Defendant Roundpoint was holding $3,954.49 in a suspense account, which simply disappeared from the Payment History on January 20, 2015, as part of a "Misapplication Reversal" with no matching entry showing that these funds were ever applied to the Loan. (PLAINTIFF'S EXHIBIT 30).

130. Even assuming that Defendant Roundpoint was correct in stating that Plaintiff's monthly payments were $1,166.53, that would mean that as on January 19, 2015, Defendant Roundpoint was holding more than three (3) full months' payments of principal, interest, taxes, insurance, and PMI in a suspense account. (PLAINTIFF'S EXHIBIT 30).

131. Pursuant to 12 C.F.R. § 1026.36(c)(1), Defendant Roundpoint was required to promptly credit

these three (3) full months' payments of principal, interests, taxes, insurance, and PMI to Plaintiff's loan.

132. Roundpoint failed to act as such, and rather than properly crediting the three (3) full months' payments of principal, interest, taxes, insurance, and PMI to Plaintiff's loan, the $3,954.49 of funds being improperly held in the suspense account simply disappeared.

133. For each of the three (3) payments that Defendant Roundpoint failed to credit to the loan and, instead, improperly held in a suspense account, Defendant Roundpoint committed a clear, separate, and distinct violation of 12 C.F.R. § 1026.36.

134. In total, Defendant Roundpoint committed three (3) clear, separate, and distinct violations of 12 C.F.R. § 1026.36.

135. Defendant Roundpoint's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

136. As a result of Defendant's actions, Defendant is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNTS NINE THROUGH TWENTY-SIX

### REAL ESTATE SETTLEMENT PROCEDURES ACT VIOLATIONS BY ROUNDPOINT: MISLEADING AND FALSE STATEMENTS AND COMMUNICATIONS WITH THE PLAINTIFF AND IMPOSITION OF A FEE OR CHARGE THAT ROUNDPOINT LACKED A REASONABLE BASIS TO IMPOSE

### 12 C.F.R. §1024.35(b)(5)

137. On or about April 12, 2014, Plaintiff sent a certified mail letter to Roundpoint's general correspondence post office box which fairly served to put Roundpoint on notice that Plaintiff

denied being in default and that there were continuing errors on how her Loan was being handled and accounted for. (PLAINTIFF'S EXHIBIT 11) Plaintiff's letter served as a Notice of Error as that term is defined in 12 C.F.R. 1024.35.

138. Plaintiffs Notice of Error stated in relevant part "I . . dispute Roundpoint "Notice of Default and Payment Due and Late Charges for Cause. . . . All Payment(s) Obligations due to date under the above referenced account . . . are fully paid to date, on time. . . (PLAINTIFF'S EXHIBIT 11)

139. Roundpoint responded to Plaintiff's Notice of Error by letter dated May 7, 2014 and denied the errors pointed out by Plaintiff's April 12, 2014 Dispute letter, and summarily pronounced that their "records indicate the account is due for the February payment . . ". Further on, Roundpoint references payment histories that "contain the information supporting our determination that there has been no error on the account."

140. However, nowhere in the Roundpoint Response letter is there a reference to what part of the records supported Roundpoint's position that Plaintiff was in default. Nor does the Response even acknowledge that the Plaintiff had already direct-paid the first installment of real her estate taxes.

141. Defendant Roundpoint made a material error in calculating Plaintiff's escrow effective January 2014, and conceded as much when they recalculated Plaintiff's escrow in February of 2014, effective March of 2014. However, Roundpoint was content to leave the Plaintiff's account otherwise unadjusted and kept the late fees intact it began charging Plaintiff for January and February. These fees were unreasonable and charged against Plaintiff prior to

fixing their own escrow mistake, even though it was Roundpoint's escrow mistake that caused the spiraling problems.

142. All of these unreasonable and baseless late fees are reflected in Roundpoint's monthly statements from January 2014 onward, in violation of RESPA at 12 CFR §1024.35(b)(5). Each and every monthly statement since January 2014 until the present has been in error, has been unreasonable and violates 12 C.F.R. §1024.35(b)(5).

143. Defendant Roundpoint has committed serious and material errors on their monthly statements for every month in 2014, except for September and October, or for ten monthly statements in 2014. Further, Roundpoint has produced monthly statements with the continuing unreasonable late fees for every month including and between January and August of 2015, for a total of eight monthly statements.

144. Each monthly statement containing these unreasonable late fees is a separate and independent error in the servicing of Plaintiff's loan pursuant to 12 C.F.R. §1024.35(b)(5), and is actionable under 12 U.S.C. 2605(f).

145. Plaintiff believes that Roundpoint's misconduct in this matter is evidence of a pattern and practice and notes that Roundpoint has over 315 consumer complaints on file with the CFPB and that 170 of those complaints concern "Loan servicing, payments, escrow account" matters. The full CFPB database reflecting said complaints is available at the following URL: https://data.consumerfinance.gov/dataset/Consumer-Complaints/s6ew-h6mp?

146. Plaintiff has been harmed by Roundpoint's misconduct and is entitled to her actual damages, statutory damages and her attorneys' fees and costs.

## COUNT TWENTY-SEVEN

## CONVERSION CLAIM AGAINST DEFENDANT ROUNDPOINT

147. Plaintiff restates and incorporates all of her statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein.

148. To prove conversion, a plaintiff must establish (1) that he or she has a right to the property; (2) that he or she has an absolute and unconditional right to the immediate possession of the property; (3) that he or she made a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Cirrincione v. Johnson,* 184 Ill.2d 109, 114 (1998).

149. The subject of conversion is required to be an identifiable object of property of which the plaintiff was wrongfully deprived. Money may be the subject of conversion, but it must be capable of being described as a specific chattel, although it need not be specifically earmarked. It must be shown that the money "at all times belonged to the plaintiff and that the defendant converted it to his own use." *In re Thebus,* 108 Ill.2d 255, 260–61 (1985).

150. As of January 19, 2015 Defendant Roundpoint was holding $3,954.49 of Plaintiff's payments in a suspense account.

151. This $3,954.49 simply disappeared from the Payment History on January 20, 2015, as part of a "Misapplication Reversal" with no matching entry showing that these funds were ever applied to the Loan. (PLAINTIFF'S EXHIBIT 30)

152. Plaintiff had the absolute right to this $3,954.49 and to have this amount applied to her Loan.

153. Plaintiff has the absolute and unconditional right to the immediate possession of the property

or to have this amount properly applied to her Loan.

154. As referenced above, Plaintiff sent a Notice of Error to Roundpoint on or about June 9, 2015, demanding that her payments be properly accepted and applied to her Loan.

155. Defendant Roundpoint wrongfully and without authorization assumed control, dominion, or ownership over the missing $3,954.49.

156. At all times, the $3,954.49 belonged to Plaintiff and Defendant Roundpoint converted this money to its own use.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Melcina Blanton, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a.   declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.   awarding Plaintiff actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

c.   awarding the Plaintiff costs and reasonable attorney fees; and

d.   awarding any other relief as this Honorable Court deems just and appropriate.

## JURY DEMAND

**Plaintiff demands trial by jury as to all claims in this action.**

Dated:  September 8, 2015                                          Respectfully submitted,

                                                                                MELCINA BLANTON

                                                               By:     /s/     Sandra M. Emerson
                                                                        One of her attorneys

Sandra M. Emerson 6244475
Matthew C Swenson 6304113
Richard F. Kohn 1500953
Emerson Law Firm, LLC
715 Lake Street, Suite 420
Oak Park, IL 60301
(708) 660-9190

Rusty Payton 06201771
Payton Dann
161 N. Clark Suite 4700
Chicago IL 60601
(312) 702-1000 PH & FAX
payton@paytondann.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via the court's electronic filing system, this 8th day of September, 2015, to:

Simon Fleischmann
David F. Standa
Irina Dashevsky
Locke Lord LLP
111 S. Wacker Drive
Chicago, IL 60606
*Attorneys for Roundpoint Mortgage Servicing Corp. and*
 *Locke Lord LLP*

Michael Kemock
Codilis & Associates, P.C.
15W030 N. Frontage Road
Suite 100
Burr Ridge, IL 60527
*Attorney for Codilis & Associates, P.C.*

/s/    Sandra M. Emerson
