IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MELCINA BLANTON, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 C 3156 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| ROUNDPOINT MORTGAGE SERVICING | ) | |
| CORP., CODILIS & ASSOCIATES, P.C., | ) | |
| LOCKE LORD LLP, and JOHNSON, | ) | |
| BLUMBERG & ASSOCIATES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Melcina Blanton filed a twenty-seven count second amended complaint against

defendants Roundpoint Mortgage Servicing Corp. ("Roundpoint"), Codilis & Associates, P.C.

("Codilis"), Locke Lord LLP ("Locke Lord"), and Johnson, Blumberg & Associates, LLC

("Johnson"),[1] alleging that defendants violated the Illinois Consumer Fraud and Deceptive

Practices Act ("ICFA"), 815 ILCS 505/1 et seq. (Count One).  Plaintiff also alleges that

defendant Roundpoint violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.

(Counts Five through Eight), and the Real Estate Settlement Procedures Act ("RESPA"),

12 U.S.C. § 2605 et seq. (Counts Nine through Twenty-Six), and converted her property (Count

Twenty-Seven).  Plaintiff further alleges that Codilis (Count Two), Johnson (Count Three), and

Locke Lord (Count Four) violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

§ 1692 et seq.  Defendants Roundpoint and Locke Lord filed the instant motion to dismiss

---

[1] Defendants Codilis and Johnson were dismissed as parties following settlement with
plaintiff.  Doc. 54.

pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons discussed below, defendants' motion is granted in part and denied in part.

## BACKGROUND[2]

In June 2009, plaintiff borrowed $104,500 from Community Bank of Oak Park and River Forest that was secured by her home.  Plaintiff alleges that while the original servicer, Franklin American Mortgage Company ("Franklin American"), serviced her loan she "was never late or in arrears."  On November 5, 2013, Roundpoint acquired the servicing rights on plaintiff's loan from Franklin American.  Plaintiff received notice from Roundpoint of the change in servicer by a letter dated November 15, 2013.

Plaintiff alleges that the first mortgage statement she received from Roundpoint, dated November 11, 2013, indicated that she was past due on her October 2013 mortgage payment. The statement asserted that plaintiff owed two payments – one for October 2013 and one for November 2013.  Plaintiff alleges that the statement was "incorrect and false because, in fact, she made her October payment to Franklin American Mortgage Company back in early October of 2013, before receiving any notice from either servicer that the Loan's servicing rights were being transferred."  Plaintiff alleges that she timely made her November 2013 payment to Roundpoint and that her December statement correctly reflected her October 2013 payment.

Plaintiff alleges that she received a notice from Roundpoint, dated November 25, 2013, in which Roundpoint informed her that her total monthly payment would be increased by $137.52 due to Roundpoint's projected 2014 escrow calculations.  Plaintiff alleges that

---

[2]  The following facts are taken from plaintiff's second amended complaint and are assumed to be true for purposes of this motion to dismiss.  See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).

Roundpoint's escrow calculations were incorrect, because "Roundpoint [had] inexplicably doubled [her] $81.86 monthly Private Mortgage Insurance (PMI) contribution which was a part of the Escrow." According to plaintiff, Roundpoint's improper calculation of her PMI also resulted in Roundpoint projecting an escrow shortage of $53.35 per month. Plaintiff alleges that upon receiving the November 2013 notice, she "contacted Roundpoint by telephone on numerous occasions to point out Roundpoint's mistakes and demand a correction to the 2014 escrow projection calculations." Roundpoint, plaintiff alleges, "never conceded the obvious mistakes in its monthly statements and escrow analysis," despite her continued communication with Roundpoint by telephone through March 2014.

Plaintiff alleges that she made her regular November and December 2013 loan payments of $1,029.01, and "continued to protest the incorrectly calculated, and substantially increased, monthly payment of $1,166.53 that was set to take effect beginning in January of 2014." The second amended complaint alleges that plaintiff's "continuing phone calls to Roundpoint were becoming increasingly frustrating and beginning to affect her blood pressure and physical health." Because "[i]t became clear to Plaintiff that Roundpoint was not going to correct its errors in re-calculating the payments on her Loan," plaintiff began engaging in "self-help," sending Roundpoint two checks each month. Plaintiff alleges that from January 2014 to December 2014 she timely sent Roundpoint two checks each month, one for $609.83 to cover her principal and interest and one for $81.86, which plaintiff alleges was the correct PMI amount. According to the second amended complaint, plaintiff "was prepared to monitor and

directly pay her real estate taxes and hazard insurance if Roundpoint continued to incompetently service her loan."[3]

Plaintiff alleges that she contacted Roundpoint in February 2014 to inquire as to whether Roundpoint was going to pay the first installment of her Cook County real estate taxes out of her escrow balance, and was informed that her taxes had already been paid. According to plaintiff, she then contacted the Cook County Treasurer and was informed that her taxes had in fact not been paid. Plaintiff alleges that she subsequently paid the real estate taxes, totaling $1,433.58, on February 4, 2014, directly to the Cook County Treasurer.

Plaintiff alleges that her mortgage statements for January, February, and March 2014 each reflected that she owed the incorrect and inflated loan amount. Plaintiff, however, received an Annual Escrow Account Disclosure Statement, dated February 19, 2014, which correctly calculated the PMI amount as $81.86. Despite having already received a statement for March 2014 containing the inflated monthly payment amount, the disclosure statement indicated that the new reduced monthly payment was effective March 1, 2014. Plaintiff alleges that the disclosure statement did not contain any information about "reconciling [her] account with the three prior months' statements or withdrawing the late fees assessed against her," which now totaled $60.98.

In late March 2014, Roundpoint sent plaintiff a Notice of Default. Plaintiff thereafter, on April 12, 2014, sent Roundpoint a Letter of Dispute, "pointing out that all the obligations under

---

[3] It is unclear from the second amended complaint whether the real estate taxes and hazard insurance accounted for the difference between the "correct" amount plaintiff allegedly owed each month – $1,029.01– and the dollar amount of the two checks she sent to Roundpoint, which equaled only $691.69.

the loan had been met and (the obligation to timely pay taxes and secure insurance were being directly handled by [her]) and that she disputed having the late payment fees attached to her account." Plaintiff alleges that Roundpoint responded by letter on May 7, 2014, "stating that [its] accounts were correct." According to plaintiff, "nowhere in the response did Roundpoint explain what particular transactions were causing a misunderstanding on Plaintiff's part," nor did the letter "acknowledge the February tax payment plaintiff made directly to the Treasurer that was not appearing as a credit on her monthly statements."

After comparison-shopping for hazard insurance, plaintiff alleges that she informed Roundpoint that she would be purchasing a Liberty Mutual insurance policy to cover her home. Plaintiff alleges that on June 10, 2014, she received an unsolicited invitation from Roundpoint to apply for a mortgage modification. According to plaintiff, because she did not need a loan modification, she did not respond to the letter. On or about June 20, 2014, plaintiff received a Notice Pursuant to the Fair Debt Collection Practices Act from Codilis, "asserting that she owed $99,913.01 on the now-accelerated Loan and threatening foreclosure if the balance was not paid in full." Plaintiff subsequently filed a civil action in the Circuit Court of Cook County against Roundpoint and Codilis on July 7, 2014.

Plaintiff alleges that on July 10, 2014, she received an unsolicited offer from Roundpoint to begin paying her mortgage on a trial period plan, which if properly completed would lead to a permanent loan modification. The letter, plaintiff alleges, falsely claimed that her loan was "seriously delinquent," and invited her to "Please call ____ at ____ if you have any questions about any of the above information." Plaintiff again did not respond to the loan modification offer, thereby declining to accept it.

The second amended complaint alleges that on July 31, 2014, Roundpoint, through Codilis, filed a foreclosure complaint against plaintiff in the Circuit Court of Cook County. The foreclosure complaint, according to plaintiff, falsely alleged that she had "not paid the monthly installments of principal, taxes, interest and insurance for 2/01/2014 through to the present" and that the "Principal balance due on the Note and Mortgage is $97,794.17, plus interest." Plaintiff alleges that from January 2014 to the time the foreclosure complaint was filed she had paid a total of $9,258.82 toward her loan.

The second amended complaint alleges that on August 15, 2014, plaintiff received a Notice of Default and Intent to Accelerate from Roundpoint, stating that she was in arrears on her loan payments since May 2014, and owed $4,440.22. Plaintiff alleges that "Roundpoint knew that these statements were patently false in mid-August 2014 and could only be asserted against [her] by assiduously ignoring [her] self-help approach of assuming direct payment of the Loan-related taxes and insurance." In addition, plaintiff alleges that by August 15, 2014, she had also "advanced $3,725.30 to keep the taxes current and the insurance in place."

Plaintiff alleges that on August 27, 2014, Roundpoint, through Codilis, moved to dismiss the foreclosure complaint against her, which was thereafter dismissed. According to the second amended complaint, plaintiff subsequently communicated with Roundpoint's new attorneys, Locke Lord. Plaintiff alleges that Locke Lord continued to treat her loan as delinquent, dating back to August 2014.

On October 20, 2014, Locke Lord sent plaintiff a letter responding to her September 9, 2014, letter, stating that Roundpoint was not legally required to respond to her notices of error or request for information and that she was not allowed to contact Roundpoint due to her pending

litigation against Roundpoint. Locke Lord further stated that Roundpoint had paid the first installment of plaintiff's real estate taxes to the Cook County Treasurer on February 11, 2014, and because plaintiff had already paid those taxes, the treasurer returned Roundpoint's payment. This letter, plaintiff alleges, upset her so much that it caused her blood pressure to go "sky-high," requiring her to see her doctor immediately who doubled her blood pressure medication dosage. Plaintiff alleges that she subsequently contacted the Cook County Treasurer, who told her that it had not received a February 2014 tax payment from Roundpoint for her home.

According to the second amended complaint, Roundpoint did not send plaintiff mortgage statements for September and October 2014. Plaintiff alleges that after demanding by letter that Roundpoint resume sending her monthly mortgage statements, Roundpoint resumed sending her mortgage statements in November 2014. Roundpoint and Locke Lord, plaintiff alleges, have "continued to try to convince, cajole, and finally threaten, [her] to accept the proffered, but unwanted, loan modification." Plaintiff alleges that despite not entering into any sort of loan modification or trial plan modification, Locke Lord sent her a letter falsely asserting that she remained in arrears on her loan and that "because of payments made on the trial modification offered by Roundpoint on July 10, 2014, Roundpoint dismissed the foreclosure case against [her]."

Plaintiff alleges that in January 2015 Roundpoint began returning all of her checks as un-negotiated. According to plaintiff, "every payment sent in 2015 has been returned with the exception of April 2015, which payments were accepted for reasons unknown to [her]." As a result of the returned payments, plaintiff alleges that the delinquency on her loan has "skyrocket[ed]." "[F]rustrated beyond belief," plaintiff wrote a letter, entitled Letter Disputing

All Charges to Present, Default and Acceleration, to the president of Roundpoint on March 30, 2015. Roundpoint acknowledged receipt of the letter on April 6, 2015.

The second amended complaint alleges that in April 2015 Roundpoint retained Johnson to continue trying to collect on her loan. On May 8, 2015, plaintiff requested via telephone that Johnson validate the debt it was attempting to collect on behalf of Roundpoint. In response, plaintiff alleges that Johnson sent her loan history documentation that was indecipherable. Plaintiff further alleges that she continued receiving false and conflicting information concerning her alleged delinquency. For example, a May 18, 2015, statement from Roundpoint indicated that plaintiff owed $16,809.33 as of that date, but a May 22, 2015, letter from Roundpoint's president stated that she owed only $11,245.36.

Following this conflicting communication, plaintiff alleges that she sent another Notice of Error to Roundpoint on June 9, 2015. In the letter, plaintiff "requested, once again, that Roundpoint correct its numerous errors and misstatements regarding her account" and that Roundpoint "remove all incorrect charges and provide a complete, decipherable payment history." Plaintiff alleges that on July 7, 2015, Roundpoint, through Johnson, filed a second foreclosure action against her in the Circuit Court of Cook County. According to plaintiff, the foreclosure complaint alleges "the same basic facts as alleged in the First Foreclosure" action. Plaintiff alleges that "[t]o date, Roundpoint continues to insist that there has been 'no error by Roundpoint.'"

## DISCUSSION

**1.     Legal Standard**

When ruling on a motion to dismiss for failure to state a claim, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor.  Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004).  The pleading must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which the claim rests.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level."  Id.

This standard demands that a complaint allege more than legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

**2.     Analysis**

**A.     TILA Claims - Counts Five through Eight**

Roundpoint argues that plaintiff's claims pursuant to the TILA fail because it is a servicer, and therefore not subject to liability under the statute.  Plaintiff does not dispute that she alleges in the second amended complaint that Roundpoint is a servicer, and that servicers are generally not subject to TILA liability.  Plaintiff, however, argues that Roundpoint is "estopped from availing itself of the servicer exemption in this case" because in a June 2014 letter from Codilis to plaintiff, attached as Exhibit 14 to the second amended complaint, Codilis identifies

Roundpoint as the creditor to whom plaintiff owes the debt. According to plaintiff, because the letter is attached to her complaint it is considered a part of the pleadings, and she has thus sufficiently plead that Roundpoint is a creditor. The court disagrees.

As Roundpoint points out, the June 2014 letter was sent pursuant to the FDCPA. Because the FDCPA defines creditor differently than the TILA,[4] Roundpoint's status as a creditor pursuant to the FDCPA is not an admission or allegation concerning its status as a creditor pursuant to the TILA. Moreover, because plaintiff's debt was initially payable to Community Bank of Oak Park and River Forest, Roundpoint cannot satisfy the TILA's statutory definition of a creditor. See, e.g., Banks v. Green Tree Servicing, LLC, No. 14-cv-2825, 2015 WL 1058124, at *5 (N.D. Ill. March 5, 2015) ("TILA applies only to a 'creditor,' which is defined in the statute as the person to whom the debt is initially payable."). As the court held in Banks, "[a]lthough courts have recently suggested that a creditor's assignee may be liable under TILA, [plaintiff] has not alleged in the complaint that [the servicer] is also the creditor's

_____

[4] The TILA defines the term "creditor" as:
a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness.
15 U.S.C. § 1602(g).

The FDCPA defines the term "creditor" as:
any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collecting of such debt for another.
15 U.S.C. § 1692a(4).

assignee." Id. Accordingly, the court dismisses Counts Five through Eight of plaintiff's second amended complaint.

### B.    RESPA Claims - Counts Nine through Twenty-Six

Roundpoint argues that plaintiff's eighteen RESPA claims, one for each incorrect mortgage statement Roundpoint sent to plaintiff, fail because the statute does not create a cause of action for sending erroneous mortgage statements, but only for improperly responding to a notice of error. As such, Roundpoint contends that at most plaintiff has a single RESPA claim corresponding to the allegations that it did not properly respond to her April 12, 2014, notice of error. Plaintiff, however, argues that the "sending of the mortgage statements at issue was essentially a continuation and reaffirmation of [Roundpoint's] refusal to correct the errors alleged by and through [her] notice of error." According to plaintiff, Roundpoint's "attempted collection" of the late fees "was an error that Roundpoint refused to correct or abate and as such, was a violation of 12 C.F.R. § 1024.35."

"RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans." Catalan v. GMAC Mortg. Corp., 629 F.3d 676, 680 (7th Cir. 2011). Section 2605(e), entitled "Duty of loan servicer to respond to borrower inquiries," provides that:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A).

The statute further provides that

> Not later than 30 days . . . after the receipt from any borrower of any qualified written request . . . before taking any action with respect to the inquiry of the borrower, the servicer shall --
>> (A)  make appropriate corrections in the account of the borrower . . . and transmit to the borrower a written notification of such correction . . . ;
>> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes --
>>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes --
>>> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).

12 C.F.R. § 1024.35(a), the corresponding regulations to section 2605(e), provides that "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error . . . ." Subsection 1024.35(b) lists categories of "errors" that trigger a servicer's obligations under the regulation. Among these errors is the "[i]mposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower." 12 C.F.R. § 1024.35(b)(5). Although plaintiff argues that Roundpoint's incorrect mortgage statements fall within this error, § 1024.35(b) merely defines what qualifies as an "error" for purposes of sending a notice; it does not create a cause of action.

As is evident from a review of the statute, section 2605(e) and its corresponding regulations (12 C.F.R. § 1024.35) outline a servicer's obligations with respect to responding to a notice of error. In fact, § 2605(e) does not address a servicer's obligations with respect to sending out mortgage statements at all. As such, plaintiff's lack of authority supporting her position that § 2605 liability can stem from sending erroneous mortgage statements, is not surprising.

Because plaintiff identifies only her April 12, 2014, notice of error as improperly responded to by Roundpoint as the basis for her RESPA claim, she can maintain only a single RESPA claim against Roundpoint. Although plaintiff argues in her response brief that Roundpoint also failed to properly respond to her June 9, 2015, notice of error, Counts Nine through Twenty-Six of her second amended complaint do not include any factual allegations concerning the June 9, 2015, notice of error and do not incorporate the preceding factual allegations of her complaint.

Roundpoint further argues that plaintiff's remaining RESPA claim, based on its alleged improper response to the April 12 notice of error, also fails because its obligation to respond under RESPA was never triggered. Roundpoint contends that pursuant to 12 C.F.R. § 1024.35(c) it had a designated address that borrowers were required to use when sending notices of error. As is clear from the face of the April 12 notice of error, attached to the second amended complaint as Exhibit 11, plaintiff failed to use the designated address when sending the notice. According to Roundpoint, the court may consider the fact that it had established a designated address and had notified plaintiff of that address in writing, because such information was included in plaintiff's January 2014 mortgage statement, which is partially attached to the

second amended complaint as Exhibit 7. The court, however, notes that the "complete January 2014 monthly statement" attached to Roundpoint's motion to dismiss as Exhibit 2, is not the January 2014 mortgage statement plaintiff refers to in her second amended complaint and attaches as Exhibit 7. Accordingly, the court is not persuaded that Roundpoint's Exhibit 2 is referred to in plaintiff's complaint or is central to her claim. See, e.g., Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

Plaintiff's RESPA claim, however, does not fail even if the court considers the January 2014 mortgage statement attached to Roundpoint's motion to dismiss. As the parties agree, plaintiff did not send her April 12 notice of error to the address designated by Roundpoint. Plaintiff argues that Roundpoint's obligations pursuant to RESPA were nonetheless triggered because it admittedly received and responded to the notice. The court, however, need not reach this issue.

12 C.F.R. § 1024.35(c) provides that "A servicer may, by written notice provided to a borrower, establish an address that a borrower must use to submit a notice of error in accordance with the procedures in this section." The subsection, however, requires that the servicer's notice to the borrower include "a statement that the borrower *must* use the established address to assert an error." 12 C.F.R. § 1024.35(c) (emphasis added). The January 2014 mortgage statement attached to Roundpoint's motion to dismiss does not include any such statement. Instead, the mortgage statement merely states in the "General Information" section that "[t]o provide [Roundpoint] with a Notice of Error about the servicing of your loan . . . please write to

14

[Roundpoint] at" the designated address. This statement, which is more of an invitation to use the designated address than a command, does not meet the statutory requirements of notifying the borrower that notices of error "must" be sent to the designated address. Accordingly, Roundpoint's obligations pursuant to RESPA were in fact triggered by plaintiff's April 12 notice of error.

Roundpoint next argues that plaintiff's RESPA claim fails because it "properly responded to [her] letter within the timeframes set out by RESPA," and its response contained all of the required information. Although plaintiff does not dispute that Roundpoint timely responded to the notice, she contends in her response and alleges in her second amended complaint that the substance of the response was inadequate pursuant to 12 C.F.R. § 1024.35. Specifically, plaintiff alleges that Roundpoint's response "summarily pronounced that their 'records indicate the account is due for the February payment.'" Plaintiff further alleges that the errors she complained about in her April 12 notice were caused by Roundpoint's mistakes. Accordingly, the court finds that plaintiff has sufficiently stated a claim under 12 C.F.R. § 1024.35(e)(1)(i)(B) that Roundpoint failed to conduct a reasonable investigation of the alleged errors, and therefore inadequately responded to her notice of error. The court therefore denies Roundpoint's motion to dismiss all RESPA claims (Counts 9 through 26), and will grant leave to plaintiff to file a single such claim.

## C.     FDCPA Claim - Count Four

Locke Lord argues that plaintiff cannot maintain an FDCPA claim against it because it is not a debt collector for purposes of the statute. According to Locke Lord, "for [it] to qualify as a debt-collector . . . RoundPoint must have acquired the serving rights for the debt after it went

into default." Citing 15 U.S.C. § 1692a(6)(F)(iii), Locke Lord argues that because the debt at issue was not in default at the time Roundpoint acquired its servicing rights, and Roundpoint did not believe it was in default at the time it acquired such rights, it is not a debt collector pursuant to the FDCPA.

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The statute, however, carves out an exception to this definition, providing that "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another" is not a debt collector "to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). In <u>Carter v. AMC, LLC</u>, 645 F.3d 840, 844 (7th Cir. 2011), the Seventh Circuit observed that "although one usually 'obtains' a debt by purchasing it, this is not the only way to do so." As such, the <u>Carter</u> court held that, "[a] servicing agent 'obtains' a debt in the sense that it acquires the authority to collect the money on behalf of another." <u>Id.</u> Accordingly, for purposes of § 1692a(6)(F)(iii), Roundpoint "obtained" the debt at issue when it acquired the right to service it on November 5, 2013.

Plaintiff's FDCPA claim, however, is not against Roundpoint, but Locke Lord, which plaintiff alleges was acting on behalf of Roundpoint. Consequently, it is the status of the debt at the time Locke Lord attempted to collect on it, not the status of the debt when Roundpoint "obtained" the debt, that is controlling. As evidenced by plaintiff's allegations and the November 18, 2014, letter Locke Lord sent to plaintiff, attached as Exhibit 22 to the second

amended complaint, Locke Lord considered the debt in default at the time it was acting as

Roundpoint's agent.  As such, plaintiff has sufficiently plead factual content that allows the court

to draw the reasonable inference that Locke Lord was acting as a debt collector under the

FDCPA.

Even assuming *arguendo* that Locke Lord's position is correct – that the status of the

debt, or at least Roundpoint's perception of the debt, at the time Roudpoint acquired the

servicing rights is controlling – the second amended complaint sufficiently alleges that

Roundpoint considered the debt in default at the time it acquired those rights.  The second

amended complaint alleges that Roundpoint assumed the servicing of plaintiff's mortgage on

November 5, 2013.  The complaint further alleges that the very first mortgage statement

Roundpoint sent to plaintiff – which was sent before Roundpoint even provided plaintiff with

notice of its status as the new servicer – indicated that plaintiff had not paid her October 2013

mortgage payment.  Second Amended Complaint, Exhibit 4.  Pursuant to the terms of the note,

which is attached to the second amended complaint as Exhibit 1, plaintiff's loan was considered

in default if she did "not pay the full amount of each monthly payment on the date it is due."

See, e.g., McKinney v. Cadleway Properties, Inc., 548 F.3d 496, 502 n.2 (7th Cir. 2008) (relying

on terms of the underlying contract governing the debt at issue in determining whether debt was

in default).  Accordingly, even one missed or late mortgage payment would qualify as plaintiff

being in default.  Locke Lord's motion to dismiss Count Four is denied.

### D.     State Law Claims – Counts One (ICFA) and Twenty-Seven (Conversion)

Having adequately plead two federal causes of action, the court rejects Roundpoint's and

Locke Lord's position that the court dismiss plaintiff's two state law claims for lack of

jurisdiction. 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims . . . ."). Defendants argue that the court should nevertheless dismiss Count One of plaintiff's second amended complaint because: (1) it improperly "lumps" defendants together; (2) plaintiff does not have a private right of action under section 2609 of RESPA; (3) the ICFA does not provide a remedy for purely private contractual disputes; (4) plaintiff has failed to allege a plausible ICFA unfairness claim; and (5) plaintiff has failed to allege facts to establish an ICFA deception claim. In its reply brief, Roundpoint and Locke Lord also argue that plaintiff has failed to "adequately respond to any of the arguments for why her ICFA claim fails," and thus waives any argument in opposition. The court, however, notes that although plaintiff may not have responded in the fashion Roundpoint and Locke Lord may have liked, her response is adequate (especially in light of the meritless nature of many of defendants' arguments), and more importantly, that plaintiff has sufficiently plead a claim pursuant to the ICFA.

Defendants first argue that Count One, asserting an ICFA claim against all defendants, fails to comply with Rule 8(a), because it "lumps together all four defendants . . . and alleges that 'Defendants' performed various acts that purportedly gave rise to her ICFA claim." According to Roundpoint and Locke Lord, plaintiff's allegations with respect to Count One do not "provide each defendant with notice of what it is alleged to have done wrong," and therefore does not "'raise the right to relief above the speculative level.'" The court disagrees.

Rule 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has interpreted this to require that the complaint "give the defendant fair notice of what the claim is and the grounds

upon which it rests." Towmbly, 550 U.S. at 555 (internal quotations omitted). While it is true that Count One recites allegations collectively against all defendants, paragraphs 2 through 84 of the second amended complaint, which are expressly incorporated into Count One, provide explicit detail as to each defendant's individual conduct. See, e.g., Gritters v. Ocwen Loan Servicing, LLC, No. 14-C-00916, 2014 WL 7451682, at *3 (N.D. Ill. Dec. 31, 2014).

Moreover, the allegations recited in Count One are not as vague as defendants represent. Plaintiff does not merely allege "various acts" that purportedly violated the ICFA, but instead specifies that defendants' attempts to "collect unauthorized fees and charges from [her] and to foreclose on [her] home," constituted the "fraud, deception, and misrepresentation" that is the basis of her ICFA claim. Accordingly, plaintiff's allegations, in the context of the entire complaint, put each defendant on notice of the specific allegations against it.

The present case is easily distinguishable from Swiss Reinsurance Am. Corp. v. Access Gen. Agency, Inc., 571 F. Supp. 2d 882 (N.D. Ill. 2008), on which defendants rely. Unlike here, the Swiss court held that the plaintiff had improperly lumped together three separate entities as a part of its four claims for breach of contract. Id. at 885. Because a nonparty to a contract cannot be liable for the contract's breach, and not all defendants were parties to each agreement, the court found that the complaint failed to state clearly which entity the plaintiff sought to hold responsible for which alleged breach. Id. at 885-86.

Defendants' second and third arguments challenging the sufficiency of plaintiff's ICFA claim are entirely without merit. Defendants improperly recast Count One as based solely on defendants' "alleged mismanagement of her mortgage escrow account." Equipped with this refashioned claim, defendants first argue that because plaintiff would not have a private right of

action under section 2609 of RESPA for the alleged mismanagement of her escrow account, she cannot maintain an ICFA claim based on that same conduct. Defendants next argue that because "[t]he management of [plaintiff's] escrow account is governed by the terms of [her] mortgage," Count One is based on a "purely private contractual dispute," and therefore not cognizable under the ICFA. As outlined in the background section above, plaintiff's claims encompass much more alleged wrongdoing than mere mismanagement of her escrow account. For example, the second amended complaint alleges numerous times that Roundpoint and Locke Lord misrepresented the status of plaintiff's loan in attempts to foreclose on her home and convince her to dismiss her state court action.

Finally, Roundpoint and Locke Lord contend that plaintiff has failed to allege facts sufficient to support her ICFA claim. The ICFA protects consumers from "unfair or deceptive acts" in the course "of any trade or commerce." 815 ILCS 505/2. To state a claim under the ICFA, a plaintiff must allege: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." Siegel v. Shell Oil Co., 612 F.3d 932, 934 (7th Cir. 2010). An individual plaintiff must additionally show actual damages caused by defendant's deceptive act. Camasta v. Jos. A. Bank Clothiers, Inc., 761 F.3d 732, 739 (7th Cir. 2014).

With respect to plaintiff's allegation that defendants' conduct was unfair, Roundpoint and Locke Lord argue that plaintiff "provides no factual enhancement." However, as discussed above, plaintiff has alleged in detail that Roundpoint improperly charged her late fees, tried to foreclose on her home even after recognizing that it had miscalculated the amount due on the

debt, and failed to conduct a reasonable investigation of her complaints.  Similarly, the second amended complaint alleges that Locke Lord misrepresented the status of her debt and previous payments in an attempt to force her to dismiss her state court action.  Viewed in a light most favorable to plaintiff, as is required at this early stage of the litigation, these allegations are sufficient to state a claim pursuant to the ICFA based on both deceptive and unfair acts.

## CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Roundpoint's and Locke Lord's motion to dismiss.  Defendants' motion is granted with respect to plaintiff's claims pursuant to the TILA and all but one of plaintiff's RESPA claims.  Defendants' motion is denied with respect to all of plaintiff's other claims.  Plaintiff is directed to file a third amended complaint conforming to this opinion on or before July 7, 2016; defendants shall answer by July 28, 2016.  The parties are directed to file a Joint Status Report using this court's form by August 4, 2016, and appear at a status hearing August 16, 2016, at 9:00 a.m.


**ENTER:**      **June 17, 2016**


**Robert W. Gettleman**
**United States District Judge**