**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MELCINA BLANTON,              )
                                         )
        Plaintiff,           )
                                         )
        v.                     )   Case No. 15 CV 3156
                                         )
ROUNDPOINT MORTGAGE SERVICING   )
CORP., and LOCKE LORD LLP        )
                                         )
        Defendants.      )

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT</u>**

69867249v.2

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................2

LEGAL STANDARD............................................................................................2

ARGUMENT ......................................................................................................3

I.    Blanton's RESPA claims fails for multiple reasons..........................................3

        A.    There is no cause of action pursuant to 12 C.F.R. § 1024.35(b)(5).......................3

        B.    Blanton's RESPA claim fails because her April 12, 2014 notice of error was sent to the wrong address. ..............................................................4

        C.    RoundPoint's response to the NOE complied with RESPA because it was timely and addressed the issues raised in Blanton's notice...................................6

        D.    Blanton did not suffer any actual damages. .........................................7

II.    Defendants are entitled to summary judgment on Blanton's ICFA claim because there is no evidence sufficient to create a genuine issue of fact as to whether Defendants' conduct cause actual damages. ..................................................9

III.    There is no evidence warranting punitive damages under ICFA. ...................12

IV.    RoundPoint is entitled to summary judgment on Blanton's conversion claim because the funds held in the suspense account were applied to Blanton's mortgage loan. ..........................................................................................13

V.    Locke Lord is entitled to summary judgment on Blanton's FDCPA claim because it is not a "debt collector" under the statute. ...................................................14

        A.    Locke Lord does not regularly engage in debt collection and its principle purpose is not debt collection. ...........................................................14

        B.    Locke Lord cannot be liable under the FDCPA in any event..............................15

CONCLUSION...................................................................................................18

69867249v.2

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................3

*Beard v. Whitley County REMC*,
   840 F.2d 405 (7th Cir. 1988) ................................................................................3

*Best v. Ocwen Loan Servicing, LLC*,
   No. 15-cv-13007, 2016 WL 125875 (E.D. Mich. Jan. 12, 2016) ...........................5

*Blakemore v. Pekay*,
   895 F. Supp. 972 (N.D. Ill. 1995) .......................................................................15

*Boyter v. Moynihan*,
   No. 3:12-cv-00586-MOC-DSC, 2013 WL 1349283 (W.D.N.C. Apr. 3, 2013) ....16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................3

*Clark v. Experian Info. Sols., Inc.*,
   256 F. App'x 818 (7th Cir. 2007) .......................................................................10

*Clark v. Experian Info. Sols., Inc.*,
   No. 03 C 7882, 2006 WL 2224049 (N.D. Ill. Aug. 2, 2006)............................9, 12

*Diedrich v. Ocwen Loan Servicing, LLC*,
   839 F.3d 583 (7th Cir. 2016) ................................................................................7

*Europlast, Ltd. v. Oak Switch Systems, Inc.*,
   10 F.3d 1266 (7th Cir. 1993) ...............................................................................12

*Geschke v. Air Force Ass'n*,
   425 F.3d 337 (7th Cir. 2005) ................................................................................9

*Gritters v. Ocwen Loan Servicing, LLC*,
   14 C 916, 2018 WL 1784134 (N.D. Ill. Apr. 13, 2018)..........................................7

*Hartl v. Presbrey & Assocs.*,
   No. 95 C 4728, 1996 WL 529339 (N.D. Ill. Sept. 16, 1996) ...............................14

*Haywood v. Massage Envy Franchising, LLC*,
   887 F.3d 329 (7th Cir. 2018) ...............................................................................12

ii

*Heller v. Graf*,
    488 F. Supp. 2d 686 (N.D. Ill. 2007).....................................................................................14

*Hunte v. Safeguard Properties Mgmt., LLC*,
    255 F. Supp. 3d 722 (N.D. Ill. 2017)...................................................................................15

*Linderman v. U.S. Bank Nat'l Ass'n*,
    887 F.3d 319 (7th Cir. 2018) ...............................................................................................7

*McGill ex rel. McGill v. Menard, Inc.*,
    No. 11 C 4950, 2013 WL 5253650 (N.D. Ill. Sept. 17, 2013)...........................................11

*Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*,
    619 F.3d 729 (7th Cir. 2010) .............................................................................................10

*Mladenovich v. Cannonito*,
    No. 97 C 4729, 1998 WL 42281 (N.D. Ill. Jan. 30, 1998) ..................................................14

*Moore v. Wells Fargo Home Mortgage*,
    16-CV-656-WMC, 2018 WL 922370 (W.D. Wis. Feb. 15, 2018) ........................................6

*Nool v. HomeQ Servicing*,
    653 F. Supp. 2d 1047 (E.D. Cal. 2009) .............................................................................16

*O'Conner v. Commonwealth Edison Co.*,
    13 F.3d 1090 (7th Cir. 1994) .............................................................................................10

*Parks v. Wells Fargo Home Mortgage, Inc.*,
    398 F.3d 937 (7th Cir. 2005) .............................................................................................13

*Payne v. Schneider Nat. Carriers, Inc.*,
    No. CIV. 09-559-GPM, 2011 WL 1575422 (S.D. Ill. Apr. 26, 2011) ..................................11

*Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*,
    845 F.3d 852, 857 (7th Cir. 2017).......................................................................................7

*Roth v. PNC Bank, N.A.*,
    No. 15 C 4779, 2015 WL 5731892 (N.D. Ill. Sept. 30, 2015)..............................................5

*Ruth v. Triumph Partnerships*,
    577 F.3d 790 (7th Cir. 2009) .............................................................................................14

*Ryan v. Wersi Elec. GmbH and Co.*,
    59 F.3d 52 (7th Cir. 1995) .................................................................................................12

*Schlaf v. Safeguard Properties, LLC*,
    No. 15 C 50113, 2017 WL 4856227 (N.D. Ill. Aug. 29, 2017)...........................................15

69867249v.2

*Schlosser v. Fairbanks Cap. Corp.*,
    323 F.3d 534 (7th Cir. 2003) ............................................................................ 16

*Schrott v. Bristol-Myers Squibb Co.*,
    403 F.3d 940 (7th Cir. 2005) ............................................................................ 11

*Skinner v. LVNV Funding, LLC*,
    No. 16 C 7089, 2018 WL 319320 (N.D. Ill. Jan. 8, 2018) .................................. 14

*Styx v. Wells Fargo Bank, N.A.*,
    No. 09-5960, 2010 WL 1253971 (N.D. Ill. Mar. 24, 2010) ................................. 13

**State Cases**

*Connick v. Suzuki Motor Co.*,
    174 Ill. 2d 482, 675 N.E.2d 584 (1996)............................................................. 11

**Federal Regulations**

12 C.F.R. 1024.35(c) .................................................................................................... 5

**Federal Rules**

Fed. R. Civ. Proc. 56(c)................................................................................................. 2

**Federal Statutes**

12 U.S.C. §§ 2605(e), 2605(f) ..................................................................................... 3

15 U.S.C. §1692a(6)................................................................................................... 14

15 U.S.C. §1692a(6)(F)(iii) ........................................................................................ 16

69867249v.2

Defendants RoundPoint Mortgage Servicing Corporation and Locke Lord LLP (collectively "Defendants") hereby submit, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, this memorandum in support of their motion for summary judgment on all counts of Blanton's third amended complaint. There are no genuine issues of material fact, and Defendants are entitled to judgment as a matter of law.

## INTRODUCTION

The old idiom "don't make a mountain out of a molehill" is sage advice. But that is precisely what Blanton has done in this dispute, which stems from an $81.86 calculation error in 2014 that was promptly corrected within two months. The miscalculation led Blanton to stop making her complete monthly mortgage payments, and she refused to make her payments even after the issue was corrected. Instead, she sued RoundPoint in a prior state court action seeking $3 million. Locke Lord was retained to defend RoundPoint and attempted to settle the case through a loan modification. But Plaintiff was not interested in a loan modification and instead filed the present action with an initial demand of $10 million. Blanton's claims have since been whittled down to four counts seeking actual, statutory, and punitive damages. Summary judgment for Defendants should be granted because there is no evidence sufficient to create a genuine issue of fact as to any form of recoverable damages.

The record includes no competent evidence that Defendants caused the health issues Blanton claims as actual damages. Statutory damages are not available under the FDCPA or RESPA because those claims lack merit: Locke Lord is not a "debt collector" under the FDCPA, and Blanton failed to send her alleged RESPA notice to the address properly designated by RoundPoint for receipt and processing of such notices. Because Blanton cannot prove actual or statutory damages, she is not entitled to punitive damages either. Simply put, Blanton is not entitled to the windfall she seeks. Defendants are entitled to judgment as a matter of law.

1

## BACKGROUND

Blanton's suit arises out of a temporary miscalculation of the private mortgage insurance ("PMI") portion of her monthly escrow payment. (SOF at ¶ 20.) The miscalculation was corrected after impacting two of her monthly payments, but despite that correction, Blanton continued to refuse to submit her entire monthly payment. (*Id.* at ¶¶ 25, 28.) Instead, she unilaterally decided she was no longer going to submit monthly payments to cover the property taxes or hazard insurance portion of her contractually agreed upon escrow payment even though the prior miscalculation had nothing to do with that portion of her payment. (*Id.* at ¶¶ 22, 24, 28.) Eventually RoundPoint took the partial payments that had been placed in suspense and applied those funds to principal and interest on Plaintiff's loan and advanced Blanton's due date. (*Id.* at ¶ 53.) Not only did Blanton refuse to submit her entire monthly payment, but she eventually filed a lawsuit against RoundPoint. (*Id.* at ¶ 30.) Locke Lord was retained to resolve that lawsuit, and through its resolution of that suit was embroiled into this dispute. (*Id.* at ¶ 32.) Locke Lord attempted to resolve Blanton's prior suit through a loan modification that would lower Blanton's payment and bring her back current on her loan. (*Id.* at ¶ 34.) Plaintiff refused the settlement offer and this suit followed. As more fully set forth in Defendants' detailed recitation of the undisputed material facts, RoundPoint properly serviced Blanton's loan according to the terms of the loan documents after the initial PMI miscalculation, and Locke Lord properly handled the resolution of Blanton's offensive state court action.

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). Material facts are those that "might affect the outcome of the suit" under the applicable

substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although Defendants have the burden of showing that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law, Plaintiff retains the converse burden of producing enough evidence to support a reasonable jury verdict in her favor. *Id.* at 256. "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original). Further, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

## ARGUMENT

### I. Blanton's RESPA claims fails for multiple reasons.

#### A. There is no cause of action pursuant to 12 C.F.R. § 1024.35(b)(5).

Blanton alleges that RoundPoint violated RESPA implementing regulation 12 C.F.R. § 1024.35(b)(5) by imposing "a fee or charge that [RoundPoint] lacks a reasonable basis to impose upon [Blanton]." (TAC at ¶¶ 120-22.) However, as this Court previously noted, "§ 1024.35(b) merely defines what qualifies as an 'error' for purposes of sending a notice; it does not create a cause of action." (Dkt. 71 at p. 12.) A servicer is only liable under RESPA for failing to respond to a valid notice of error, not because it sent mortgage statements with allegedly improper late charges. *See* 12 U.S.C. §§ 2605(e), 2605(f). Despite the Court's prior opinion regarding 12 C.F.R. § 1024.35(b)(5), Blanton reasserted her RESPA claim premised on

the purported violation of that same regulation. (TAC at p. 34.) That regulation unequivocally does not create a cause of action, and RoundPoint is entitled to summary judgment as a result.

**B.      Blanton's RESPA claim fails because her April 12, 2014 notice of error was sent to the wrong address.**

Even if Blanton's RESPA claim was premised on a section of the statute or implementing regulations that allowed for a private cause of action, the evidence here demonstrates that there is no genuine issue of material fact as to RoundPoint's obligations and compliance under RESPA. Blanton's RESPA claim is premised on RoundPoint's allegedly insufficient response to a purported notice of error ("NOE") she sent on April 12, 2014.[1] (TAC at ¶¶ 116-18.) Blanton's claim fails because the letter she sent on April 12, 2014 was not sent to the address specifically identified by RoundPoint for NOE communications, and therefore it does not qualify as an NOE and cannot form the basis of liability under RESPA.

In early 2014, RoundPoint made additions and changes to the format of its monthly mortgage statements. (SOF at ¶ 27.) To explain the additions and formatting changes to its customers, RoundPoint included a letter with all of the monthly statements sent to borrowers in the month of February 2014, including the two statements sent to Blanton. (*Id.*) In this letter, RoundPoint informed Blanton that it "designated [an] address for submitting Notices of Error and Requests for Information" and that "[i]n order to receive the protections provided under federal law, [Blanton] must submit Notices of Error, Requests for Information...in writing to: RoundPoint Mortgage Servicing Corporation PO Box 19789 Charlotte, NC 28219-9409" (the

---

[1] Plaintiff identifies other correspondence she had with RoundPoint, but the sole RESPA triggering NOE she identifies is the letter she sent on April 12, 2014. (TAC at ¶¶ 116-18.) Further, this Court previously held that "[b]ecause plaintiff identifies only her April 12, 2014, notice of error as improperly responded to by Round[P]oint as the basis for her RESPA claim, she can maintain only a single RESPA claim against Round[P]oint." (*See* Amended Memorandum Opinion and Order, (Dkt. 71 at p. 13).)

"Designated Address"). (*Id.*) Blanton, however, sent her April 12, 2014 letter to RoundPoint at P.O. Box 19409 Charlotte, NC 28219, not the Designated Address. (SOF at ¶ 37.)

12 C.F.R. § 1024.35(c) specifies that "[a] servicer may, by written notice provided to a borrower, establish an address that a borrower ***must*** use to submit a NOE in accordance with the procedures in this section." 12 C.F.R. 1024.35(c) (emphasis added). In its February 2014 statement, RoundPoint notified Blanton in writing that the Designated Address was the only address for submitting NOEs. (SOF at ¶ 27.) Blanton, however, did not send the April 12, 2014 letter to the Designated Address as she was instructed to do. Thus, RoundPoint's obligation to respond pursuant to RESPA was never triggered. *Roth v. PNC Bank, N.A.*, No. 15 C 4779, 2015 WL 5731892, at *3 (N.D. Ill. Sept. 30, 2015) (dismissing RESPA claim where purported QWR was not sent to address specified by the mortgage servicer; "Simply put, if the servicer chooses to establish a separate and exclusive office and address, borrowers who fail to submit their QWRs to that location do so at their peril." (quotations omitted)); *see also Best v. Ocwen Loan Servicing, LLC*, No. 15-cv-13007, 2016 WL 125875, at *2 (E.D. Mich. Jan. 12, 2016) ("The language of the regulations leaves no ambiguity. If a servicer establishes a QWR mailing address and provides it to a borrower by written notice, a borrower ***must*** use the designated address to submit a QWR. Accordingly…failure to send the QWR to the designated address…does not trigger the servicer's duties under RESPA." (quotations omitted) (emphasis added)).

There is no genuine issue of material fact that Blanton did not send her April 12, 2014 letter to the Designated Address as required under 12 C.F.R. § 1024.35(c). Therefore, Blanton's RESPA claim fails, and RoundPoint is entitled to summary judgment.

C. **RoundPoint's response to the NOE complied with RESPA because it was timely and addressed the issues raised in Blanton's notice.**

Even if the NOE had been sent to the Designated Address, Blanton's RESPA claim still fails because RoundPoint properly responded to Blanton's letter within the timeframes required by the statute and implementing regulations. The letter was received on April 23, 2014. (SOF at ¶ 38.) In compliance with 12 C.F.R. § 1024.35(d), RoundPoint acknowledged receipt of the letter on the same day. (*Id.* at ¶ 39.) Subsequently, in compliance with 12 C.F.R. § 1024.35(e)(3)(C), RoundPoint provided Blanton with the results of its investigation via a letter dated May 7, 2014. (*Id.* at ¶ 40.) RoundPoint's response informed Blanton that no error had occurred and that it reached that determination by reviewing Blanton's payment histories, which were provided along with the response. (*Id.*) Additionally, the response contained contact information, including a phone number, for a RoundPoint employee who Blanton could contact with further questions. (*Id.*) RoundPoint's response detailed that the partial payments Blanton had sent throughout 2014 were combined to make complete loan payments and that her loan was due for the February 1, 2014 payment. (*Id.*) Thus, RoundPoint's response complied with all of the requirements of Section 1024.35(e)(1)(B).

Blanton's claim is essentially a disagreement with the substance of RoundPoint's response; she believes late fees should not have been assessed despite her failure to submit complete monthly payments in 2014. (TAC at ¶¶ 120-22.) However, RESPA does not provide a remedy for a borrower who disagrees with the substance of a servicer's timely response to a written inquiry. As explained in *Moore v. Wells Fargo Home Mortgage*, 16-CV-656-WMC, 2018 WL 922370, at *7 (W.D. Wis. Feb. 15, 2018), RESPA requires only that a servicer timely provide the requested information or explain why the requested information is unavailable. Here, RoundPoint responded to the purported NOE with sufficient documentation and detail as to why

there was no error: the late fees were assessed because complete monthly payments were not received. (SOF at ¶ 40.) Such a response is sufficient to satisfy the requirements of RESPA and entitles RoundPoint to summary judgment. *See, e.g. Gritters v. Ocwen Loan Servicing, LLC*, 14 C 916, 2018 WL 1784134, at \*16 (N.D. Ill. Apr. 13, 2018) (granting summary judgment to defendant where plaintiff's RESPA claim was premised upon a disagreement over the contents of defendant's timely response to a NOE).

**D.      Blanton did not suffer any actual damages.**

Even if Blanton could establish that she sent the purported NOE to the correct address and that RoundPoint's response was insufficient, her claim still fails because there is no evidence of actual damages attributable to the sufficiency of the NOE response. Under RESPA, "a remedy depends on proof of 'actual damages.'" *Linderman v. U.S. Bank Nat'l Ass'n*, 887 F.3d 319, 321 (7th Cir. 2018) (upholding entry of summary judgment in defendant's favor because plaintiff could not establish actual damages caused by defendant's failure to properly respond to QWR). In other words, to sustain a RESPA claim, plaintiffs must "come forward with evidence sufficient to support an award of actual damages." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591-92 (7th Cir. 2016). Plaintiffs must also demonstrate that those actual damages stem from the servicer's failure to properly respond to their QWRs. *Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 857 (7th Cir. 2017) ("[RESPA] gives borrowers a cause of action against a servicer for actual damages suffered 'as a result of' a servicer's failure to comply with these duties."); *see also Diedrich, 839 F.3d at 591-92* (upholding entry of summary judgment in favor of defendant where plaintiffs did not present sufficient evidence to demonstrate a "causal connection between the injury they allege, including the claim for emotional damages, and [defendant's] failure to respond to the qualified written request for information.").

Here, the only damages specifically alleged to have been suffered by Blanton as the result of RoundPoint's purportedly insufficient response to her letter are late charges that were erroneously charged to her account.[2] (TAC at ¶¶ 120-22.) Blanton bases this claim on her assertion that the result of RoundPoint's investigation was incorrect. (*Id.*) This assertion, however, is demonstrably false. While there was an error in Blanton's escrow analysis that slightly increased her monthly payment starting in January 2014, that increase was solely related to Blanton's PMI. (SOF at ¶ 20.) For unknown reasons, Blanton unilaterally decided to cease submitting payments to cover the property taxes and hazard insurance portion of her monthly escrow payments even though there were no errors related to those two calculations. (*Id.* at ¶ 22.) Late charges were then assessed to Blanton's account based on the incomplete payments. (*Id.* at ¶ 23.) RoundPoint's response contained documentation detailing these facts and was therefore correct. (*Id.* at ¶ 40.) Moreover, even if the response was incorrect or insufficient, the response in no way caused the late fees to be assessed to Blanton's account; the fees were assessed solely based on the incomplete monthly payments. There is no causal connection between the damages sought and RoundPoint's response to Blanton's letter, and for this additional reason RoundPoint is entitled to summary judgment on Blanton's RESPA claim.

*     *     *

For the foregoing reasons, Blanton's RESPA claim fails at each and every turn, and RoundPoint is entitled to summary judgment on count three of the third amended complaint.

---

[2] To the extent Plaintiff seeks to rely on her medical ailments as actual damages allegedly suffered as the result of RoundPoint's purported RESPA violation, her claim suffers from the same lack of evidence as her ICFA claim. *See* Section II *supra*.

## II. Defendants are entitled to summary judgment on Blanton's ICFA claim because there is no evidence sufficient to create a genuine issue of fact as to whether Defendants' conduct cause actual damages.

Actual damages are a required element of an ICFA claim and a defendant is entitled to summary judgment if the plaintiff cannot prove this essential element. *Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir. 2005) (analyzing Illinois law and finding that "the plaintiff suffered actual damage" is a required element of an ICFA claim); *see also Clark v. Experian Info. Sols., Inc.*, No. 03 C 7882, 2006 WL 2224049, at *3 (N.D. Ill. Aug. 2, 2006) (granting summary judgment on plaintiff's ICFA claim because plaintiff failed to "demonstrate that there is evidence in the record to support her" allegation that she suffered actual damages). Blanton cannot establish that she suffered damages because she has not designated an expert witness and her treating physician cannot testify as to causation. Even if her treating physician could testify as to causation, his testimony cannot establish that Defendants' conduct proximately caused Blanton's medial issues.

As a discovery sanction, Blanton has been barred "from using evidence at trial" from "Dr. Levi, the orthopedic doctor who allegedly postponed plaintiff's knee surgery because of her high blood pressure," and "from using evidence at trial" from "Dr. Ten, who is the physician referred to in paragraph 63 of plaintiff's third amended complaint," who allegedly told Blanton to double her blood pressure medication. (SOF at ¶¶ 47, 48.) Blanton did not offer an expert witness regarding her healthcare or medical issues in this case. (SOF at ¶ 49.) Thus, the sole physician she is allowed to elicit testimony from is her primary care physician, Dr. Michael Bice. (*See* SOF at ¶¶ 45-46, 49.) But Dr. Bice cannot give an opinion as to the causation of Blanton's medical issues because he did not make a determination as to causation at the time of treatment, he was not offered as an expert, and he did not submit an expert report as required by Rule 26(a)(2). The Seventh Circuit "does not distinguish the treating physician from other experts

when the treating physician is offering expert testimony regarding causation." *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 n.14 (7th Cir. 1994). Therefore, "a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one retained or specially employed to provide expert testimony in the case, and thus is required to submit an expert report in accordance with Rule 26(a)(2)." *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734–35 (7th Cir. 2010). This is because "a treating physician who testifies as to causation is often going beyond what was observed during treatment and therefore the professional shall follow Rule 26(a)(2)(B) and serve an expert report complying with that Rule." *Id.* at 734 (quotations omitted).

Here, Dr. Bice is a treating physician who did not determine causation of Blanton's medical issues at the time of his treatment. (SOF at ¶ 51, 52.) Indeed, Blanton never even mentioned her mortgage loan to Dr. Bice, Blanton was "chronically depressed and anxious," and at no point during Defendants' involvement with Blanton's loan would Dr. Bice describe her as healthy. (*Id.* at ¶¶ 50-52.) Further, Blanton did not designate Dr. Bice as an expert, and she did not have Dr. Bice submit an expert report pursuant to Rule 26(a)(2). Dr. Bice therefore cannot give an opinion as to causation. *Meyers*, 619 F.3d 729 at 734. And because Blanton did not designate any other physician as an expert, she cannot prove the essential element of actual damages to establish her ICFA claim.

Even if Dr. Bice was exempt from the requirements of Rule 26(a)(2), Blanton's ICFA claim still fails because she cannot establish that Defendants' conduct was the proximate cause of her damages. "Illinois law requires a finding of proximate causation under ICFA, and does not provide for such causation to be inferred." *Clark v. Experian Info. Sols., Inc.*, 256 F. App'x 818,

822 (7th Cir. 2007) (citing *Oliveira v. Amoco Oil. Co.,* 201 Ill.2d 134, 267 (2002)). Indeed, the Illinois Supreme Court has stated, "[p]laintiffs can recover damages under the Consumer Fraud Act *only* for injuries that were proximately caused by the alleged consumer fraud." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 502, 675 N.E.2d 584, 594 (1996) (emphasis in original). The Seventh Circuit has recognized this requirement and found that a plaintiff must establish a "causal link" between the defendant's conduct and the plaintiff's damages. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 945 (7th Cir. 2005).

Blanton cannot rely on her own testimony or the testimony of any other lay person to establish causation. *McGill ex rel. McGill v. Menard, Inc.*, No. 11 C 4950, 2013 WL 5253650, at *8 (N.D. Ill. Sept. 17, 2013) ("In general…a lay person may not give an opinion as to the causation of a health problem or offer a detailed medical diagnosis (or self-diagnosis)." (quotations omitted)); *see also Payne v. Schneider Nat. Carriers, Inc.*, No. CIV. 09-559-GPM, 2011 WL 1575422, at *1 (S.D. Ill. Apr. 26, 2011) ("It is the case, of course, that issues of medical causation, involving as they do matters beyond the knowledge of ordinary jurors, must be proven through the use of expert testimony."). Thus, Blanton's only witness who can testify as to her medical issues is her primary care physician, Dr. Michael Bice. (SOF at ¶¶ 46-48.) Dr. Bice's testimony, however, does not establish that Blanton's medical issues were proximately caused by Defendants' conduct. Dr. Bice testified at his deposition that Blanton has suffered from obesity, arthritis, and hypertension since at least 2000—thirteen years before RoundPoint or Locke Lord had any interaction with Blanton. (SOF at ¶¶ 50-52.) Dr. Bice also testified that Blanton never mentioned the mortgage company or her mortgage payments at any time while he was treating her, that she was "chronically depressed and anxious," and that at no point between 2012 through the present would he ever describe her as healthy. (SOF at ¶ 52.)

While proximate causation is typically a question of fact, "a court may find lack of proximate causation as a matter of law" where "there is no material issue regarding the matter or only one conclusion is clearly evident" from the undisputed facts. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 334 (7th Cir. 2018). Blanton can provide no evidence that her medical issues were the result of Defendants' conduct and this Court should find that there is a lack of proximate cause as a matter of law. *Ryan v. Wersi Elec. GmbH and Co.*, 59 F.3d 52, 54 (7th Cir. 1995) (affirming entry of summary judgment in defendants favor on ICFA claim where plaintiff could not "show a causal connection between the alleged misrepresentations and his damages."); *see also Clark*, 2006 WL 2224049, at *3 (N.D. Ill. Aug. 2, 2006) (granting summary judgment on ICFA claim where the record is devoid of evidence establishing the actual damages requirement).

*     *     *

Simply put, Blanton cannot establish that her medical issues, all of which existed well before her interactions with Defendants, are in any way related to the Defendants' purported misconduct. As a result, Defendants are entitled to summary judgment on Blanton's ICFA claim.

## III. There is no evidence warranting punitive damages under ICFA.

Even if Blanton's ICFA claims survive this motion, the Court should enter summary judgment on Blanton's overreaching request for punitive damages. (TAC at p. 40.) Punitive damages are not favored under Illinois law. *Europlast, Ltd. v. Oak Switch Systems, Inc.*, 10 F.3d 1266, 1276 (7th Cir. 1993) ("The Illinois Supreme Court has noted that '[b]ecause of their penal nature, punitive damages are not favored in the law, and courts must be cautious in seeing that they are not improperly or unwisely awarded.'") (quoting *Deal v. Byford*, 127 Ill.2d 192 (1989)). They are allowed only when misconduct is "outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of

others." *Styx v. Wells Fargo Bank, N.A.*, No. 09-5960, 2010 WL 1253971, \*3 (N.D. Ill. Mar. 24, 2010) (citing *Loitz v. Remington Arms Co.,* 138 Ill.2d 404, 415-16 (1990)).

There is no evidence that Defendants' conduct was outrageous or reckless. Rather, RoundPoint's application of payments, assessment of fees, and handling of Blanton's escrow account was based on a good-faith interpretation of the requirements of the loan documents. Further, Locke Lord's conduct was done in a good faith effort to resolve Blanton's offensive claim via settlement. Even if this Court finds some servicing error, there is no evidence that any errors were anything more than simple negligence. Blanton should not be entitled to punitive damages. *See Parks v. Wells Fargo Home Mortgage, Inc.*, 398 F.3d 937, 942 (7th Cir. 2005) (lender's failure to perform its duty to pay real estate taxes for borrower was not outrageous misconduct or reckless indifference; "Ordinary negligence does not support an award of punitive damages").

## IV. RoundPoint is entitled to summary judgment on Blanton's conversion claim because the funds held in the suspense account were applied to Blanton's mortgage loan.

RoundPoint is entitled to summary judgment on Blanton's final claim because it did not convert any of Blanton's money. Blanton claims that $3,954.49 "simply disappeared from the Payment History." (TAC at ¶ 133.) But that is incorrect. The $3,954.49 that was in Blanton's suspense account was added to $314.32 of recoverable corporate advances and applied to the principal and interest amounts of her monthly mortgage statements due for July 1, 2014 through February 1, 2015, which totaled $4,268.81. (SOF ¶ 53.) There is no evidence of any theft, and no trial is needed to determine how RoundPoint applied funds from Blanton's suspense account. Summary judgment should therefore be entered in its favor on count four of Blanton's third amended complaint.

69867249v.2

**V.    Locke Lord is entitled to summary judgment on Blanton's FDCPA claim because it is not a "debt collector" under the statute.**

    **A.    Locke Lord does not regularly engage in debt collection and its principle purpose is not debt collection.**

Blanton alleges that Locke Lord violated various provisions of the FDCPA through its efforts to settle the state court lawsuit that she filed against RoundPoint. (TAC ¶¶ 59, 60, 115-118, Exs. 19, 22.) But, to be liable under the FDCPA, Locke Lord must meet the FDCPA's definition of "debt collector." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 796 (7th Cir. 2009) ("The FDCPA distinguishes between debt collectors, who are subject to the statute's requirements, and creditors, who are not."). The FDCPA defines debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692a(6). The evidence here affirmatively establishes that Locke Lord does not meet that definition, and it is entitled to summary judgment as a result.

An attorney or law firm is a debt collector ***only*** when its principal business is debt collection or it regularly collects the debts of others. *Heller v. Graf*, 488 F. Supp. 2d 686, 691 (N.D. Ill. 2007) (attorney is a debt collector "only when an attorney's principal business is debt collection, or those who regularly collect debts of another"); *see also Skinner v. LVNV Funding, LLC*, No. 16 C 7089, 2018 WL 319320, at *4 (N.D. Ill. Jan. 8, 2018) (summary judgment in favor of law firm is appropriate where plaintiff cannot establish that law firm's primary purpose is debt collection); *Mladenovich v. Cannonito*, No. 97 C 4729, 1998 WL 42281, at *2 (N.D. Ill. Jan. 30, 1998) ("An attorney is a "debt collector" when his principle business is debt collection or when he regularly collects the debts of another."); *Hartl v. Presbrey & Assocs.*, No. 95 C

4728, 1996 WL 529339, at *2 (N.D. Ill. Sept. 16, 1996) (same); *Blakemore v. Pekay*, 895 F. Supp. 972, 977 (N.D. Ill. 1995) (same).

Locke Lord does not regularly engage in the collection of debt for others. (SOF ¶ 53.) Instead, as was the case with Locke Lord's representation of RoundPoint in Blanton's offensive state court action, Locke Lord's involvement in the mortgage servicing industry is resolving offensive claims, counterclaims and affirmative defenses filed against its clients. (*Id.* at ¶ 54.) Thus, Locke Lord can only qualify as a debt collector under the FDCPA if its principal business is debt collection, but that is not the case.

To be deemed a party whose principal business is debt collection, a party must have "*one* principal purpose." *Hunte v. Safeguard Properties Mgmt., LLC*, 255 F. Supp. 3d 722, 726 (N.D. Ill. 2017) ((interpreting "Congress's use of the definite article" "the" to mean an entity can only have one principal purpose) (emphasis in original). "A party will not be considered a debt collector under the principle purpose definition if collection of debts is merely ***some*** of that party's business." *Schlaf v. Safeguard Properties, LLC*, No. 15 C 50113, 2017 WL 4856227, at *3 (N.D. Ill. Aug. 29, 2017) (citing *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1317 (11th Cir. 2015)) (emphasis added).

The sole purpose of Locke Lord's business is not the collection of debt. (SOF at ¶ 55.) The firm instead has a wide array of purposes and functions in the legal services industry. (*Id.*). Locke Lord does not regularly engage in debt collection, its principle purpose is not debt collection, and it is therefore not a "debt collector" for purposes of the FDCPA.

**B.     Locke Lord cannot be liable under the FDCPA in any event.**

Even if Locke Lord fit into the FDCPA's definition of debt collector, which it does not, Blanton's FDCPA claim would nonetheless fail because Locke Lord meets one of the FDCPA's exceptions to the debt collector definition. The "FDCPA's definition of debt collector 'does not

include the consumer's creditors, a mortgage servicing company, or any assignee of the debt, so long as the debt was not in default at the time it was assigned.'" *Nool v. HomeQ Servicing*, 653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009) *quoting Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985); *see also* 15 U.S.C. §1692a(6)(F)(iii) (the FDCPA specifically states that the definition of debt collector "does not include…any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity…concerns a debt which was not in default at the time it was obtained by such person."). This exception extends to law firms acting on behalf of an assignee of the debt. *See Boyter v. Moynihan*, No. 3:12-cv-00586-MOC-DSC, 2013 WL 1349283, at *7 (W.D.N.C. Apr. 3, 2013) ("To be liable, defendants must be 'debt collectors' as to the loan in question, and neither the bank that held the note, its employees, *or its agents (such as a law firm* or trustee service employed to foreclose the Note and Deed of Trust) are considered debt collectors.") (emphasis added). Therefore, because Locke Lord was acting as counsel for RoundPoint, if RoundPoint acquired the right to service Blanton's loan before it went into default, then Locke Lord is exempt from liability under the FDCPA. *Id.* There is no question of fact, and indeed Blanton has admitted, that her loan was not in default at the time servicing transferred to RoundPoint. (SOF ¶ 10). Thus, RoundPoint and by extension Locke Lord meet the exception to the FDCPA's definition of debt collector.

The Seventh Circuit has held that even if the debt is not actually in default, an entity still qualifies as a debt collector under the FDCPA if it treats the debt as in default at the time of acquisition; essentially an exception to the exception. *See Schlosser v. Fairbanks Cap. Corp.*, 323 F.3d 534, 539 (7th Cir. 2003). Even under that analysis though, Locke Lord still does not fall under the FDCPA's definition of debt collector.

RoundPoint's corporate representative testified that RoundPoint did not treat the loan as in default when it acquired servicing rights. (SOF at ¶ 11.) Moreover, the first monthly statement that RoundPoint sent to Blanton was dated November 11, 2013, four days prior to the expiration of the 15-day grace period Blanton had for her monthly payments. (*Id.* at ¶ 12.) This statement indicated that RoundPoint had not yet received Blanton's monthly payment for November and that her monthly payment for December was coming due. (*Id.* at ¶ 13.) This statement never indicated to Blanton that her loan was in default nor did it include late charges. (*Id.* at ¶¶ 14, 15.) On November 25, 2013, RoundPoint issued another statement to Blanton after it received and processed her November payment. (*Id.* at ¶ 16.) This statement acknowledged receipt of the payment and informed Blanton that only the December payment was coming due. (*Id.*) As with the November 11 statement, this statement did not in any way indicate that Blanton's loan was in default nor did it include late charges. (*Id.* at ¶¶ 17, 18.) Blanton made a timely payment in December 2013. (*Id.* at ¶ 21.)

Blanton failed to make a complete payment in January 2014. (*Id.* at ¶ 22.) And it was only after Blanton missed ***that*** total payment that RoundPoint assessed late fees and started to treat the loan as being in default. (*See id.* at ¶ 23.) Thus, Blanton's loan was not in default, nor did RoundPoint treat it as if it was in default, until at least two months after servicing was transferred to RoundPoint. RoundPoint and, by extension, Locke Lord, therefore do not fall into the Seventh Circuit's exception to the exception and do not qualify as "debt collectors" under the FDCPA.

As a result, Blanton's FDCPA claim necessarily fails and Locke Lord is entitled to summary judgment on count two of the third amended complaint.

## CONCLUSION

The pleadings, documents, and declarations before the Court on Defendants' Motion for Summary Judgment clearly establish that there is no genuine issue as to any material fact. Therefore, Defendants are entitled to judgment as a matter of law on all counts.


Simon Fleischmann                              Respectfully submitted,
*sfleischmann@lockelord.com*
David F. Standa                                ROUNDPOINT MORTGAGE SERVICING
*dstanda@lockelord.com*                        CORPORATION and LOCKE LORD LLP
LOCKE LORD LLP
111 South Wacker Drive                         By:    /s/  David F. Standa
Chicago, Illinois  60606                              One of Their Attorneys
Telephone:  312-443-0700

## CERTIFICATE OF SERVICE

I, David F. Standa, an attorney, do hereby certify that on September 7, 2018, I caused the foregoing Memorandum to be served through the Court's Case Management/Electronic Case Files (CM/ECF) system upon all persons and entities registered and authorized to receive such service.

/s/ David F. Standa