IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELCINA BLANTON, ) <br> ) <br> Plaintiff, ) <br> ) Case No. 15 CV 3156 <br> v. ) <br> ) Judge Robert W. Gettleman <br> ROUNDPOINT MORTGAGE ) <br> SERVICING CORPORATION, and ) <br> LOCKE LORDE LLP, ) <br> ) <br> Defendants. ) | |

**ORDER**

Plaintiff Melcina Blanton filed a four count third amended complaint against RoundPoint Mortgage Servicing Corporation ("RoundPoint") and Locke Lord LLP ("Locke Lord"). This court previously granted in part and denied in part RoundPoint and Locke Lord's motion to dismiss plaintiff's second amended complaint. See Blanton v. Roundpoint Mortgage Servicing Corp., No. 15 C 3156, 2016 WL 3653577 (N.D. Ill. July 7, 2016).

In her third amended complaint, plaintiff alleges that: (1) RoundPoint and Locke Lord violated the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/2 (Count One); (2) Locke Lord violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Count Two); (3) RoundPoint violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 et seq. (Count Three); and (4) RoundPoint converted plaintiff's property (Count Four). Plaintiff moves for summary judgment, as do RoundPoint and Locke Lord. For the reasons discussed below, plaintiff's motion is denied and RoundPoint and Locke Lord's motion is granted.

**BACKGROUND**

Plaintiff's allegations are stated in detail in Blanton, 2016 WL 3653577 at *1–4. The court recounts only those facts relevant to the parties' summary judgment motions. Those facts are taken from the parties' L.R. 56.1 statements and from the depositions and exhibits, and are not genuinely disputed unless otherwise noted.

Plaintiff Melcina Blanton's mortgage loan was serviced by defendant RoundPoint Mortgage Servicing Corporation. Plaintiff agreed to create an escrow account to pay her property taxes, hazard insurance and private mortgage insurance ("PMI"). In November 2013, RoundPoint analyzed the escrow amount for plaintiff's loan and sent plaintiff an escrow account disclosure statement dated November 25, 2013. That statement told plaintiff that her total monthly mortgage payment would be increasing by $137.52 in January 2014. Part of that increase was due to RoundPoint's error—it incorrectly doubled plaintiff PMI payment. As a result, plaintiff's projected mortgage payment for 2014 was overstated by $81.86. Plaintiff contacted RoundPoint to resolve the error. Plaintiff and RoundPoint were unable to do so.

When plaintiff received her mortgage statement for January 2014, she did not pay the portion of her PMI payment that RoundPoint had overstated. She also did not pay RoundPoint for her real estate taxes or hazard insurance. She paid the same amount for February 2014. RoundPoint assessed late charges for January and February.

RoundPoint corrected the PMI error in February 2014 after it had already sent plaintiff a monthly statement for February. RoundPoint sent plaintiff an updated account statement on February 17, 2014. Enclosed with the statement was a letter stating that RoundPoint had "designated [an] address for submitting Notices of Error and Requests for Information," and that "[i]n order to receive the protections provided under federal law, [plaintiff] must submit Notices

of Error, Requests for Information . . . in writing to: RoundPoint Mortgage Servicing Corporation PO Box 19789 Charlotte, NC 28219-9409."

On April 12, 2014, plaintiff sent a letter to RoundPoint disputing her default and the late charges that she had been assessed. The letter was addressed to RoundPoint Mortgage Servicing Corp, P.O. Box 19409 Charlotte, NC 28219. On May 7, 2014, RoundPoint sent a written response to plaintiff's letter. RoundPoint's response stated that there was no error on the account that required correction at that time, and that it reached that determination by reviewing plaintiff's payment histories, which RoundPoint enclosed.

Plaintiff continued to send incomplete monthly payments for the rest of 2014. As RoundPoint received partial payments, it held the funds in an unapplied or "suspense" account until enough funds were received for a complete monthly payment. On August 31, 2016, RoundPoint applied $3,954.49 of funds held in suspense to plaintiff's mortgage payments for July 2014 through February 2015.

In July 2014, plaintiff sued RoundPoint in the Circuit Court of Cook County. Locke Lord was retained to defend RoundPoint. As part of its representation, Locke Lord offered to settle plaintiff's suit with a trial loan modification that would have reduced plaintiff's mortgage payments and that would have brought her account current. Plaintiff did not accept the offer. Her state court suit was later dismissed without prejudice.

## **DISCUSSION**

Plaintiff, RoundPoint, and Locke Lord move for summary judgment. Summary judgment is proper when no material fact is genuinely disputed and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is genuinely disputed if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Anderson v.

3

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the moving party meets its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The court draws all justifiable inferences in favor of the non-moving party. Anderson, 477 U.S. at 255.

At issue are all four of plaintiff's claims. The parties move for summary judgment on her claims against: (1) RoundPoint and Locke Lord, for violating the ICFA, 815 ILCS 505/2; (2) Locke Lord, for violating the FDCPA, 15 U.S.C. § 1692d–f; (3) RoundPoint, for violating RESPA, 12 U.S.C. § 2605(e)(1)(A); and (4) RoundPoint, for common law conversion.

**1      Illinois Consumer Fraud Act**

Plaintiff first claims that RoundPoint and Locke Lord violated the ICFA, 815 ILCS 505/2, by overcharging her $137.52 on her monthly mortgage payments. For plaintiff's ICFA claim to survive summary judgment, the evidence must allow a reasonable jury to find that RoundPoint and Locke Lord acted deceptively during conduct involving commerce, and that RoundPoint and Locke Lord intended for plaintiff to rely on their deceptive act. Siegel v. Shell Oil Co., 612 F.3d 932, 934 (7th Cir. 2010).

The evidence must also allow a reasonable jury to find that RoundPoint and Locke Lord's deceptive act proximately caused actual damages. Id. at 935. Because there is no evidence of proximate cause here, RoundPoint and Locke Lord are entitled to summary judgment on plaintiff's ICFA claim. Plaintiff alleges that RoundPoint and Locke Lord's phone calls and letters affected her physical health and raised her blood pressure "sky-high." She does not deny that she needs expert testimony to show that those alleged injuries were proximately caused by RoundPoint and Locke Lord. See, e.g., Wintz v. Northrop Corp., 110 F.3d 508, 515 (7th Cir. 1997) ("Under Illinois law, to serve as the sole basis for a conclusion that an act was the

4

proximate cause of the plaintiff's injury, an expert must be able to testify with a reasonable degree of medical certainty that proximate cause existed."). Nor does plaintiff deny that her treating physician, Dr. Michael Bice, who she designated as her causation expert, has not submitted a report opining that plaintiff's injuries were caused by RoundPoint and Locke Lord.

Plaintiff nonetheless argues that Dr. Bice need not submit an expert report on causation, citing the commentary to Fed. R. Civ. P. 26: "The requirement of a written report . . . applies only to those experts who are retained or specially employed to provide such testimony in the case . . . . A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report." Plaintiff ignores settled caselaw rejecting her argument:

> [W]e have not until now had the occasion to determine whether a treating physician who provides an expert opinion as to causation is required to file a formal report under Rule 26(a)(2)(B) when the subject of such opinion was not determined at the time of treatment. We resolve this outstanding issue today by concluding that a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one "retained or specially employed to provide expert testimony in the case," and thus is required to submit an expert report in accordance with Rule 26(a)(2).

Meyers v. Nat'l R.R. Passenger Corp. (Amtrak), 619 F.3d 729, 734–35 (7th Cir. 2010). Like the plaintiff in Meyers, plaintiff offers no evidence that Dr. Bice "previously considered or determined the cause of" her injuries "during the course of treatment." Id. at 735. She thus was required to tender Dr. Bice as a causation expert and to have him submit an expert report under Fed. R. Civ. P. 26(a)(2). Plaintiff's failure to proffer admissible evidence of proximate causation entitles RoundPoint and Locke Lorde to summary judgment on her ICFA claim.

5

**2      Fair Debt Collection Practices Act**

Next, plaintiff claims that Locke Lord violated the FDCPA by engaging in abusive, deceptive, and unconscionable debt collection practices. 15 U.S.C. § 1692d–f. The FDCPA applies only to debt collectors. See generally 15 U.S.C. § 1692b et seq. Locke Lord argues that it cannot be held liable under the FDCPA because it is not a debt collector. A "debt" is an "alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ."15 U.S.C. § 1692a(5). A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Locke Lord is entitled to summary judgment on plaintiff's FDCPA claim. Locke Lord has submitted a declaration from a partner, P. Russell Perdew, stating that "Locke Lord does not regularly initiate offensive litigation that seeks the collection of debt owed to others," and that "Locke Lord's involvement in litigation related to the mortgage servicing industry rarely involves initiating lawsuits, and instead relates almost entirely to defending lawsuits, counterclaims, and affirmative defenses initiated by borrowers against Locke Lord's clients."

Plaintiff offers no evidence to genuinely dispute Perdew's declaration. She points out that Locke Lord's website states that its Debt Finance Practice lawyers "work closely with our restructuring and insolvency lawyers in connection with work-outs, collateral realization and collection matters, bankruptcies and debtor-in-possession and exit financings" (emphasis added). Those "collection matters" plainly refer to the collection of commercial debt. A debt collector under the FDCPA, however, collects debts "of a consumer to pay money arising out of a

6

transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ." 15 U.S.C. § 1692a(5) (emphasis added). Locke Lord's involvement in commercial debt collection is not evidence that it regularly collects consumer debts.

By failing to genuinely dispute Locke Lorde's Perdew affidavit, plaintiff fails to make a showing sufficient to establish an essential element of her FDCPA claim—that Locke Lorde is a debt collector. Locke Lorde is thus entitled to summary judgment on plaintiff's FDCPA claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The court need not decide whether plaintiff's debt was in default when RoundPoint acquired its servicing rights. See Blanton, 2016 WL 3653577 at *7–8 (denying RoundPoint's motion to dismiss plaintiff's FDCPA claim because the first mortgage statement that RoundPoint sent to plaintiff "indicated that plaintiff had not paid her October 2013 mortgage payment," and "even one missed or late mortgage payment would qualify as plaintiff being in default").

### 3    Real Estate Settlement Procedures Act

Plaintiff brings her next claim under the Real Settlement Procedures Act. RESPA is a consumer protection statute that regulates the servicing of real estate loans. Under RESPA, a loan servicer must respond in writing to certain borrower inquiries. 12 U.S.C. § 2605(e)(1)(A); 12 C.F.R. § 1024.35(e)(1)(i)(B). Plaintiff claims that RoundPoint violated RESPA by inadequately investigating and responding to the errors she identified in her April 12, 2014 letter.

A servicer "may, by written notice provided to a borrower, establish an address that a borrower must use to request information in accordance with the procedures in this section." 12 C.F.R. § 1024.36(b) (emphasis added). RoundPoint established such an address. In February 2014, RoundPoint sent plaintiff a mortgage statement stating that it had "designated

[an] address for submitting Notices of Error and Requests for Information," and that "[i]n order to receive the protections provided under federal law, [plaintiff] must submit Notices of Error, Requests for Information . . . in writing to: RoundPoint Mortgage Servicing Corporation PO Box 19789 Charlotte, NC 28219-9409." In a letter dated April 12, 2014, plaintiff wrote to RoundPoint, claiming that she was not in default.

Plaintiff failed to send her April 12 letter to the address that RoundPoint established. She sent her letter not to PO Box 19789—the established address—but to PO Box 19409. Under 12 C.F.R. § 1024.36(b), plaintiff's failure to send her letter to the correct address entitles to RoundPoint to summary judgment on her RESPA claim. Although the Seventh Circuit has yet to interpret 12 C.F.R. § 1024.36(b), "[c]ircuit courts consistently conclude that a loan servicer need not answer a misaddressed QWR [Qualified Written Request]—and that responding to such a letter does not trigger RESPA duties—if the servicer set an exclusive address." Wease v. Ocwen Loan Servicing, L.L.C., 915 F.3d 987, 995 (5th Cir. 2019), citing Bivens v. Bank of America, N.A., 868 F.3d 915, 921 (11th Cir. 2017), Roth v. CitiMortgage Inc., 756 F.3d 178, 182 (2d Cir. 2014), and Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1149 (10th Cir. 2013); see also Lawson v. Specialized Loan Servicing, LLC, No. 18-5250, 2018 WL 7575708, at *4 (6th Cir. Sept. 14, 2018) ("A servicer is not obligated to respond to QWRs sent to an address other than the designated QWR address."), and Santos v. Ocwen Loan Servicing, LLC, 722 F. App'x 690, 691 (9th Cir. 2018) ("Santos did not send his letters to the address that Ocwen set up for receiving qualified written requests, so Ocwen was not obligated to respond to them.").

Plaintiff offers no serious response. She simply points to the allegations in her complaint and this court's previous order denying RoundPoint's motion to dismiss her RESPA claim. This court's order, however, was based only on plaintiff's second amended complaint and the

8

documents attached to it. The second amended complaint did not attach plaintiff's February 2014 mortgage statement. It attached plaintiff's January 2014 mortgage statement, which "merely states in the 'General Information' section that '[t]o provide [Roundpoint] with a Notice of Error about the servicing of your loan . . . please write to [Roundpoint] at' the designated address." Blanton, 2016 WL 3653577 at *7. This court held that the January 2014 statement was "more of an invitation to use the designated address than a command," and thus did "not meet the statutory requirements of notifying the borrower that notices of error 'must' be sent to the designated address." Id.

Discovery has revealed plaintiff's February 2014 mortgage statement. Unlike the January 2014 statement, the February 2014 statement told plaintiff that she "must submit Notices of Error, Requests for Information . . . in writing to: RoundPoint Mortgage Servicing Corporation PO Box 19789 Charlotte, NC 28219-9409" (emphasis added). Plaintiff cannot rest on the January statement attached to her complaint: the point of summary judgment is "to pierce the pleadings and to assess the proof . . . to see whether there is a genuine need for trial." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis added; citation and quotation marks omitted).

Because plaintiff failed to send her letter to the address that RoundPoint established under 12 C.F.R. § 1024.36(b), RoundPoint is entitled to summary judgment. The court need not decide whether plaintiff suffered damages or whether RoundPoint's response letter violated the requirements set forth in 12 C.F.R. § 1024.35(e)(1)(i)(B).

**4      Conversion**

Finally, plaintiff sues RoundPoint for conversion: the "wrongful deprivation of property from the person entitled to possession permanently or for an indefinite time." In re Rosin, 156 Ill.

2d 202, 208 (Ill. 1993). Plaintiff alleges that RoundPoint held $3,954.49 of her payments in a suspense account and that the funds in that account "simply disappeared" on January 20, 2015. RoundPoint has, however, submitted unrebutted evidence that on August 31, 2016, it applied the amount in suspense to plaintiff's payments for July 2014 through February 2015. There is no genuine dispute: RoundPoint did not deprive plaintiff of her money permanently or for an indefinite time. RoundPoint is thus entitled to summary judgment on plaintiff's conversion claim.

## CONCLUSION

Defendants RoundPoint Mortgage Servicing Corporation and Locke Lord LLP's motion for summary judgment (Doc. 200) is granted. Plaintiff Melcina Blanton's motion for summary judgment (Doc. 205) is denied.

**ENTER:** September 11, 2019

_____
**Robert W. Gettleman**
**United States District Judge**