NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals
### For the Seventh Circuit
### Chicago, Illinois 60604

Argued June 2, 2020
Decided August 26, 2020

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 19-2781

| | |
|---|---|
| MELCINA BLANTON,<br>*Plaintiff-Appellant*,<br><br>*v.*<br><br>ROUNDPOINT MORTGAGE<br>SERVICING CORPORATION and<br>LOCKE LORD LLP,<br>*Defendants-Appellees*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 15-cv-3156<br><br>Robert W. Gettleman,<br>*Judge*. |

**O R D E R**

RoundPoint Mortgage Servicing erred in calculating Melcina Blanton's private mortgage insurance ("PMI") for a few months in 2014. As a result, RoundPoint charged Blanton more for her mortgage than she actually owed; she responded by not paying RoundPoint for her property taxes and hazard insurance for the rest of the year. Blanton then sued RoundPoint in state court. Locke Lord LLP, in its representation of RoundPoint, attempted to settle Blanton's claims by offering her a loan modification. She refused and sued both RoundPoint and Locke Lord in federal court. The district court held that RoundPoint and Locke Lord were entitled to summary judgment on all Blanton's claims. We agree.

Case: 1:15-cv-03156 Document #: 241 Filed: 09/17/20 Page 2 of 7 PageID #:2354
Case: Case:2781 Document: 007113683167 Filed: 08/26/2020 Pages: 7

No. 19-2781 Page 2

## I. Background

Melcina Blanton secured a mortgage loan from Community Bank of Oak Park and River Forest in 2009 to buy a house. Blanton also set up an escrow account, which collected payments from Blanton to cover her property taxes, hazard insurance, and PMI. Initially, Franklin American Mortgage Company serviced Blanton's mortgage and collected her payments.

In October 2013, Franklin American notified Blanton that RoundPoint would take over as her mortgage servicer the next month. Blanton promptly sent RoundPoint her November mortgage payment. Later that month, RoundPoint sent Blanton an escrow account disclosure statement notifying Blanton that her monthly payment would increase by $137.52 starting January 2014. Part of this increase, however, was due to RoundPoint mistakenly counting Blanton's PMI payment twice. RoundPoint incorrectly overstated Blanton's new monthly payment by at least $81. Blanton contacted RoundPoint and attempted to resolve this error, to no avail.

RoundPoint then sent Blanton her January mortgage statement; Blanton submitted an incomplete payment that did not cover the property tax and hazard insurance portion of her escrow payment. Blanton made the same, incomplete payment in February. RoundPoint treated Blanton's loan as being in default and started charging her late fees.

After Blanton submitted her February payment, RoundPoint noticed its PMI calculation error. It sent Blanton a revised escrow statement correcting the error later that month. Enclosed with this escrow statement was a letter from RoundPoint informing Blanton that it had designated an address for customers to send their notices of error and requests for information. The letter stated: "In order to receive the applicable protections provided under federal law, you must submit Notices of Error, Requests for Information, and appeals of loan modification denials in writing to … P.O. Box 19789." A few months later, Blanton sent a letter disputing the late fees she had been charged to a different address, P.O. Box 19409. RoundPoint responded by telling Blanton that there was no error with her account.

Blanton continued to make incomplete mortgage payments for the rest of 2014. RoundPoint kept these funds in a "suspense" account. As these funds accumulated, RoundPoint applied them to Blanton's loan amount. In August 2016, RoundPoint applied $3,954.49 from the suspense account to cover Blanton's principal and interest payments from July 2014 through February 2015.

Case: 1:15-cv-03156 Document #: 241 Filed: 09/17/20 Page 3 of 7 PageID #:2355
Case: 19-2781  Document: 00713583167  Filed: 08/26/2020  Pages: 7

No. 19-2781　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 3

Blanton first sued RoundPoint in state court in July 2014. RoundPoint hired Locke Lord to represent it. Locke Lord sent Blanton a settlement offer in the form of a loan modification. This offer would reduce Blanton's monthly mortgage payments, bring her account current, and resolve Blanton's claims against RoundPoint. Blanton did not accept this offer.

One year after Blanton sued RoundPoint in state court, Blanton, acting *pro se*, sued RoundPoint and Locke Lord in federal court. Blanton, now represented by counsel, later filed a twenty-seven count second amended complaint. RoundPoint and Locke Lord filed a motion to dismiss the second amended complaint for Blanton's failure to state a claim, Fed. R. Civ. P. 12(b)(6). The district court dismissed all but four of Blanton's claims. The surviving claims included one for common law conversion and three for violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/2 *et seq.*; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 *et seq.*

After some discovery, the parties filed cross-motions for summary judgment. The district court denied Blanton's motion and granted summary judgment to RoundPoint and Locke Lord on all claims.

## II. Analysis

Blanton now appeals the district court's decisions, arguing that the district court erred by granting summary judgment to RoundPoint and Locke Lord. We review a district court's grant of summary judgment *de novo*. *Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, 956 F.3d 950, 955 (7th Cir. 2020). And on review of cross-motions for summary judgment, we view all facts and inferences from those facts in the light most favorable to the nonmoving party on each motion. *Lalowski v. City of Des Plaines*, 789 F.3d 784, 787 (7th Cir. 2015). Summary judgment is appropriate when "there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law." *Skyrise Constr. Grp.*, 956 F.3d at 955–56 (citing Fed. R. Civ. P. 56(a)).[1]

---

[1] Many of Blanton's arguments fail to recognize this standard. Blanton seems to argue throughout her brief that the district court should not have granted summary judgment to RoundPoint and Locke Lord because the district court had already rejected similar arguments in ruling on the defendants' motion to dismiss. But when ruling on the defendants' motion to dismiss, the district court had to accept the complaint's well-pled factual allegations as true. *See Shawnee Trail Conservancy v. U.S. Dep't of Agric.*, 222 F.3d 383, 385 (7th Cir. 2000). In contrast, summary judgment is the "put up or shut up" moment in a

Case: 1:15-cv-03156 Document #: 241 Filed: 09/17/20 Page 4 of 7 PageID #:2356
Case: 19-2781 Document: 00713583167 Filed: 08/26/2020 Pages: 7

No. 19-2781 Page 4

First, Blanton argues the district court erred by granting summary to Locke Lord on her FDCPA claim. The FDCPA applies to *debt collectors*. *See, e.g.*, 15 U.S.C. § 1692d–f; *see also Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009). A "debt collector" is "any person who uses any instrumentality of interstate commerce … in any business the principal purpose of which is the collection of any debts, or who *regularly* collects or attempts to collect … debts owed or due." 15 U.S.C. § 1692a(6) (emphasis added); *cf. Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) ("[T]he [FDCPA] applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation."). A "debt" is "any obligation or alleged obligation of a *consumer* to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5) (emphasis added).

The district court held that Blanton failed to make a sufficient showing that Locke Lord is a debt collector, an essential element of her FDCPA claim. Specifically, Blanton failed to genuinely dispute an affidavit from a Locke Lord partner stating that "Locke Lord does not regularly initiate offensive litigation that seeks the collection of debt owed to others."

Blanton argues that Locke Lord is a debt collector because it regularly collects on debts owed. In support of this proposition, Blanton only cites to Locke Lord's website, which describes Locke Lord's "Debt Finance" practice: "We also work closely with our restructuring and insolvency lawyers in connection with work-outs, collateral realization and collection matters, bankruptcies and debtor-in-possession and exit financings."[2] Blanton believes this statement directly contradicts the Locke Lord partner's affidavit and provides a genuine dispute of material fact.

But Blanton misreads Locke Lord's website. True, the website explicitly mentions "collection matters." But it describes Locke Lord's debt finance group, which helps clients "manage every step of the complex acquisition financings and restructurings." *Id.* It's in this context that Locke Lord's debt finance group might work on "collection

---

lawsuit: the party "must show what evidence it has that would convince a trier of fact to accept its version of events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (internal quotation marks omitted) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). Blanton can no longer depend on the allegations in her complaint. So, her arguments relying heavily on the district court's reasoning at the motion to dismiss stage of this case miss the mark.

[2] *Debt Finance*, Locke Lord LLP, https://www.lockelord.com/services/practices/banking--finance/debt-finance--capital-markets (last visited Aug. 25, 2020).

No. 19-2781 Page 5

matters." As the district court noted, "[t]hose 'collection matters' plainly refer to the collection of commercial debt." And even if the website did refer to *consumer* collection matters, it does not mention how often Locke Lord lawyers participate in those collection matters. Blanton therefore fails to genuinely dispute the Locke Lord partner's affidavit denying that Locke Lord participates regularly in debt collection. Locke Lord is entitled to summary judgment on this claim.

Second, Blanton argues that the district court erred by granting summary judgment to the defendants on her ICFA claim. For an ICFA claim to survive summary judgment, a plaintiff must show: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). Importantly, a plaintiff must also "demonstrate that the defendant's conduct is the proximate cause of the injury." *Id.* at 935.

The district court noted that Blanton "does not deny that she needs expert testimony to show that [her] alleged injuries were proximately caused by RoundPoint and Locke Lord." Blanton also did not dispute that Dr. Michael Bice—Blanton's treating physician whom she "designated as her causation expert"—did not submit a report opining about the cause of her declining physical health and rising blood pressure. And since Dr. Bice did not consider the cause of her injuries during the course of treatment, the district court determined that an expert report was required. *See* Fed. R. Civ. P. 26(a)(2)(B). The district court granted summary judgment to the defendants on this claim because Blanton failed to present any admissible evidence proving causation and damages.

Blanton's only argument that even acknowledges the district court's reasoning is that treating physicians are not required to submit expert reports. In support of this argument, she cites the commentary to Rule 26(a)(2):

> The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.

Blanton, however, fails to acknowledge our opinion in *Meyers v. National Railroad Passenger Corp. (Amtrak)*, 619 F.3d 729 (7th Cir. 2010). There, we held that "a treating

Case: 1:15-cv-03156 Document #: 241 Filed: 09/17/20 Page 6 of 7 PageID #:2358
Case: 19-2781    Document: 00713633167    Filed: 08/26/2020    Pages: 7

No. 19-2781                                                                    Page 6

physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment," is "required to submit an expert report in accordance with Rule 26(a)(2)." *Id.* at 734–35. Blanton never mentioned RoundPoint or her mortgage payments to Dr. Bice during the course of treatment. And because Dr. Bice did not make a determination about the causation of Blanton's injury at the time he treated Blanton, he was required to submit an expert report. Blanton presents no admissible evidence as to causation, a necessary element of her ICFA claim. Summary judgment was appropriate.[3]

Blanton next argues that the defendants' motion for summary judgment should have been denied regarding her conversion claim. Under Illinois law, conversion is the unauthorized deprivation of property from a person entitled to possess that property. *In re Estate of Yanni*, 48 N.E.3d 1161, 1166 (Ill. App. Ct. 2015). Blanton acknowledges that, for money to be the subject of conversion, it must have "at all times belonged to the plaintiff" and the defendant must have "converted [the money] to [the defendant's] own use." *In re Thebus*, 483 N.E.2d 1258, 1261 (Ill. 1985).

Blanton's conversion claim is simple. She argues that $3,954.49 of her money that RoundPoint was holding in a suspense account "simply disappeared." And because she had "the absolute right" to have this money applied to her loan, summary judgment should not have been awarded.

But Blanton ignores evidence that shows exactly where this money went. Jared Fink, a RoundPoint employee familiar with RoundPoint's loan record system, submitted an affidavit stating that the "$3,954.49 that was in [Blanton's] suspense account was applied to the principal and interest amounts of her monthly mortgage payments due for July 1, 2014 through February 1, 2015." Fink also submitted a copy of Blanton's payment history supporting his statement.

RoundPoint did exactly what Blanton is asking it to do: apply the $3,954.49 in her suspense account to her loan payments. RoundPoint never deprived Blanton of this

---

[3] At oral argument, Blanton argued that—as a result of RoundPoint's and Locke Lord's deceptive acts—she suffered monetary injury in addition to suffering from high blood pressure and deteriorating physical health. But Blanton failed to raise this issue in her appellate brief. Any argument about these additional injuries, then, is waived. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012) (failing to develop an argument in appellate briefs results in waiver); *Holman v. Indiana*, 211 F.3d 399, 406 (7th Cir. 2000) (argument made at oral argument but not raised in appellate brief is waived).

Case: 1:15-cv-03156 Document #: 241 Filed: 09/17/20 Page 7 of 7 PageID #:2359
Case: 19-2781   Document: 00713583167   Filed: 08/26/2020   Pages: 7

No. 19-2781                                                                                      Page 7

money and did not convert this money for its own use. The district court therefore correctly granted summary judgment to RoundPoint on Blanton's conversion claim.

Finally, Blanton argues that RoundPoint was not entitled to summary judgment on her RESPA claim. She contends that RoundPoint failed to adequately respond to her April 12 notice of error letter. She also points out that "[t]he Court has already determined that the Plaintiff has satisfied her claim for RESPA" in its order denying in part the defendants' motion to dismiss and that "the Defendants have not submitted any new evidence to deviate from this ruling."

RESPA requires loan servicers to respond to certain borrower inquiries. 12 U.S.C. § 2605(e)(1). RESPA also allows loan servicers, like RoundPoint, to establish "an address that a borrower must use to request information in accordance with the procedures in this section." 12 C.F.R. § 1024.36(b). As the district court pointed out, our circuit has not yet interpreted 12 C.F.R. § 1024.36(b). But other circuits have concluded that borrower inquiries sent to an address other than the one established by the loan servicer do not trigger RESPA duties, even if the loan servicer responds. *See, e.g.*, *Wease v. Ocwen Loan Servicing, LLC*, 915 F.3d 987, 995 (5th Cir. 2019); *Bivens v. Bank of Am., N.A.*, 868 F.3d 915, 921 (11th Cir. 2017).

Following other circuits' lead, the district court held that RoundPoint was entitled to summary judgment because Blanton sent her letter to an address other than the one RoundPoint established for receiving notices of error. It turns out that RoundPoint told Blanton in her February 2014 mortgage statement that she "*must* submit Notices of Error[ or] Requests for Information … in writing to: RoundPoint Mortgage Servicing Corporation[,] PO Box 19789[,] Charlotte, NC 28219-9409." But Blanton did not send her April notice of error letter to this address.

This case could present an issue of first impression for our court: the interpretation of 12 C.F.R. § 1024.36(b). But Blanton does not engage with the district court's reason for granting summary judgment to RoundPoint on her RESPA claim. Blanton instead chose to copy—almost word-for-word—her brief to the district court in opposition to the defendants' motion for summary judgment, which does not address 12 C.F.R. § 1024.36(b). "An appellant who does not address the rulings and reasoning of the district court forfeits any arguments [she] might have that those rulings were wrong." *Hackett v. City of South Bend*, 956 F.3d 504, 510 (7th Cir. 2020). Blanton has thus forfeited any argument that the district court erred in granting summary judgment to RoundPoint on this claim. The judgment of the district court is AFFIRMED.